Frank Cole WHALEN, Jr., Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.
Submitted: July 2, 1984.
Decided: April 12, 1985.

Nancy Jane Mullen (argued), J. Dallas Winslow, Jr., Patricia C. Hannigan, Asst. Public Defenders, Wilmington, for appellant.

Kevin O'Brien (argued), Deputy Atty. Gen., Wilmington; James E. Liguori, former Deputy Atty. Gen., Dover, for appellee.

Before HERRMANN, C.J., McNEILLY, HORSEY, MOORE and CHRISTIE, JJ., constituting the Court en Banc.

MOORE, Justice:

Frank C. Whalen was convicted of Murder First Degree, Rape First Degree and Burglary First Degree. He was sentenced to die. On appeal this Court affirmed his convictions, but reversed the death sentence and remanded the case for a new penalty hearing. *Whalen v. State,* Del. Supr., 434 A.2d 1346 (1981) *cert. denied,* 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449 (1982) (hereinafter, *Whalen I*). At that later proceeding the death penalty was reimposed, and Whalen again appeals that sentence.

Numerous grounds for reversal are urged by the defendant. We accept certain of them, limiting our decision to the following: The trial judge improperly reimpaneled the original jurors more than four years after they participated in the first constitutionally defective penalty hearing; there was an inadequate voir dire of the jury prior to the second penalty hearing; and the jury was not adequately instructed on either the applicable Delaware law or the jury's role in applying that law under 11 *Del.C.* § 4209.[1] However, we reject the argument that imposition of the death penalty for a felony murder is per se unconsti-

---

1. For the provisions of 11 *Del.C.* § 4209, see Appendix A, *infra.*

tutional. In view of the foregoing reversible errors, we again vacate the defendant's death sentence and order a new hearing on that issue.

## I.

Whalen's convictions of Murder First Degree, 11 *Del.C.* § 636(a)(2), Rape First Degree, 11 *Del.C.* § 764(1), and Burglary First Degree, 11 *Del.C.* § 826(2), arose out of the rape and murder by strangulation of Elva D. Kemp, who was ninety-two years old and weighed seventy-five pounds. The attack occurred late one night in Mrs. Kemp's home where she lived with her invalid husband.

In *Whalen I*, this Court held that the original penalty hearing was defective because the jury was permitted to consider unconstitutionally vague statutory aggravating circumstances. Specifically, the jury had been instructed that a necessary statutory aggravating circumstance would be established if it found that the victim was "elderly" or "defenseless". However, in *State v. White*, Del.Supr., 395 A.2d 1082 (1978), this Court had earlier held that the terms "elderly" and "defenseless" were unconstitutionally vague. Furthermore, in *Whalen I* the jury had failed to identify and specify the statutory aggravating circumstances relied upon in imposing the death penalty as required by this Court's interpretation of § 4209(e). *Whalen I*, 434 A.2d at 1360 *citing State v. White*, Del. Supr., 395 A.2d 1082 (1978). The matter was remanded for a new penalty hearing.

After that ruling the defendant sought reargument to determine whether the new hearing should be before the original jury. The State joined in requesting this Court to address that issue. Moreover, it was the State's position, later followed by it in the trial court, that a completely new jury should be impaneled. This Court subsequently stated in a supplemental opinion that "[w]e have determined that this question should, *in the first instance*, be presented to the Superior Court for resolu-

tion". *Whalen*, 434 A.2d at 1370 (Supplemental opinion) (emphasis added).

Thereafter, the subject was handled in a brief office conference between the trial judge and counsel immediately before the second hearing. The positions of the defendant and the State were overruled, and the original jury was ordered reimpaneled for the new punishment hearing. Pursuant to the trial judge's suggestion made at the conference, all objections were held until the end of the trial when they were to become part of the record. However, no transcript exists of anything that occurred at this conference.

Prior to the second penalty hearing, the defendant requested that before the same jury was reimpaneled the court conduct individual voir dire of each juror. The defendant submitted a list of twenty-six proposed questions designed to elicit facts indicating that the jurors' service in the original trial, or events arising during the intervening 4½ years, would affect their ability to reach a fair and impartial verdict. The trial judge refused to conduct individual voir dire or to use any of the defendant's proposed questions, noting that "[m]ost of them [the proposed questions] will be asked in effect".

The trial court then made the following statement to the reimpaneled jury in lieu of individual voir dire:

> Ladies and gentlemen, you have been summoned in order that we can have a new penalty hearing in the case of *State vs. Frank C. Whalen, Jr.* It is proper for you to recall the trial of this defendant, but it is required that you put out of your mind the prior penalty hearing. Since that hearing, new guidelines have been established and a new hearing is required. It is necessary that you approach this hearing impartially and with an open mind and fix the penalty to be imposed based only upon what you hear and see at this hearing.
>
> Is there any reason why any juror cannot be impartial and give the defend-

ant a fair hearing regardless of what you may have previously seen, read or heard?

That was the extent of the voir dire, and the penalty hearing commenced when no jurors responded to the judge's inquiry.

After both the State and the defense had finished presenting their evidence and had made their closing statements, the Court instructed the jury as follows:

Ladies and gentlemen, the sole matter for your determination at this time is the penalty to be imposed upon the defendant for the conviction of first degree murder.

You have heard counsel for the State and the defendant express their positions on which penalty should be imposed. While it is proper for you to consider the position of each attorney upon this issue, the matter is entirely within your discretion after considering the evidence and applying the law contained in these instructions.

In reaching your determination, the jury may consider any mitigating or aggravating circumstances raised by the evidence either at this hearing or at the trial.

The sentence of death shall not be imposed unless you find unanimously and beyond a reasonable doubt at least one statutory aggravating circumstance and then unanimously recommend after weighing all the relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender that a sentence of death be imposed.

You may consider the following statutory aggravating circumstance: In this case the murder occurred during the commission of rape.

A recommendation of death is binding upon the Court. If you do not recommend the death penalty, a sentence of life imprisonment without benefit of probation or parole will be imposed.

A reasonable doubt is defined as a substantial doubt.

I will hand you a copy of these instructions and a questionnaire which your forelady will fill out. It is self-explanatory, and when you return to the courtroom it will simply be handed to the clerk and read in open court by me.

As the judge stated, the forelady was handed a copy of the jury instructions and a questionnaire. The questionnaire, or interrogatories to the jury, required the forelady to check yes or no after the following statement:

Does the jury unanimously find beyond a reasonable doubt that the following statutory aggravating circumstance existed?

1. The murder occurred during the commission of rape.

If the answer "yes" was checked, the forelady was to check yes or no after the following question:

1. Does the jury unanimously recommend that a sentence of death be imposed?

All jurors were then to sign the form on the lines provided.

The defendant's objections to all aspects of the penalty hearing were first heard by the court after the jury retired for deliberation. Included were objections to the manner in which voir dire was conducted, and to the instructions given the jury.

After an hour and thirteen minutes of deliberation the jurors returned a unanimous verdict of death based on the statutory aggravating circumstance that the murder occurred during the commission of a rape. The judge reimposed the death sentence and set the date of execution.

## II.

The defendant appeals on numerous grounds.

### A.

A major issue is the reimpaneling of the original jury over 4½ years after the first trial, without any meaningful voir dire, and with little if any consideration given to the

joint position of the defendant and the State that a new jury be selected. In his ruling the trial judge merely said that: "11 *Del.C.* § 4209(b) clearly states that the punishment hearing after a conviction of first degree murder 'shall' be before the jury that convicted the defendant".

■ We agree that in the typical situation, where the penalty hearing follows shortly after the determination of guilt, Section 4209 anticipates that the same jury will determine both issues. However, Section 4209(b) specifically refers to using a new panel when "a jury of 12 jurors cannot participate in the hearing". The trial judge apparently interpreted these provisions to apply only to the circumstance of physical impossibility, and failed to give any consideration to the legal and factual circumstances of juror disqualification. Such an interpretation was clearly erroneous.

■ This case was initially remanded for a new penalty hearing because of prejudicial error in the first trial. The original jurors had considered two unconstitutionally vague statutory aggravating circumstances. Necessarily, this raises serious questions whether they could remain fair and impartial in a second penalty hearing, notwithstanding the taint to which they were earlier exposed. This goes to the fundamental constitutional requirement that a jury must be composed of fair and impartial persons. *See Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *Hughes v. State,* Del.Supr., 490 A.2d 1034, 1040 (1985); *Styler v. State,* Del.Supr., 417 A.2d 948, 951–52 (1980). Given the lapse of over four years between the two penalty hearings, and without any meaningful voir dire at the second trial regarding various disqualifying contacts or other prejudicial matters affecting the impartiality of the jury, it is manifest that this jury could not have been impaneled pursuant to 11 *Del.C.* § 4209. Without

more, it may be presumed that the original jurors could not meet the constitutional and legal qualifications necessary to participate in the second penalty hearing.

This conclusion is supported by the decisions of several other jurisdictions. We have previously recognized that the Delaware death penalty statute "was obviously fashioned upon the Georgia Statute approved by the United States Supreme Court in *Gregg*". *State v. White,* Del. Supr., 395 A.2d 1082, 1085 (1978), *citing Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The Georgia law, like Delaware's, provides for the same jury to determine guilt and impose the penalty. While recognizing the role of the original jury, the Georgia Supreme Court has stated, "we also hold that a new trial on the sentence can be held before a new jury where the jury that convicted the accused also sentenced him to death and the sentence was reversed on appeal because of some error that infected the sentence". *Miller v. State,* Ga.Supr., 237 Ga. 557, 229 S.E.2d 376, 377 (1976). Consequently, a new jury has been impaneled in numerous subsequent Georgia cases when the original decision was remanded for a new penalty hearing. *See, Godfrey v. State,* Ga. Supr., 248 Ga. 616, 284 S.E.2d 422 (1981); *Stevens v. State,* Ga.Supr., 245 Ga. 583, 266 S.E.2d 194, 196 (1980); *Burger v. State,* Ga.Supr., 245 Ga. 458, 265 S.E.2d 796, 798 (1980); *Sprouse v. State,* Ga.Supr., 242 Ga. 831, 252 S.E.2d 173, 176 (1979); *Fleming v. State,* Ga.Supr., 243 Ga. 120, 252 S.E.2d 609, 611 (1979).

A similar conclusion was reached in *Messer v. State,* Fla.Supr., 330 So.2d 137 (1976), where the Florida Supreme Court reasoned that a new jury should be impaneled even though it would "result in a hearing before a different jury from that which heard the evidence upon which the verdict of guilty was rendered". *Id.* at 142. This result was based on statutory language conceptually similar to Del-

aware's.[2] Thus, we must conclude that on this record it was an abuse of discretion and manifest legal error for the trial judge to have impaneled the same jury for the second penalty hearing. Both sides requested that a new jury be impaneled, yet the court failed to provide any opportunity for a timely hearing on the subject. Instead, the issue was disposed of in a brief office conference which was held immediately prior to the second hearing. It was also at this office conference that counsel "agreed", at the trial judge's suggestion, to hold until the end of the trial any objections they had to the proceedings. We believe that the opportunity to enter timely and proper objections is extremely important to our trial system, and should not be abandoned merely for convenience or expedition. Objections serve a dual purpose. They provide an occasion for a trial judge to timely correct or remedy that which is legally improper as well as to preserve such questions for appellate review. By the procedure followed here, the trial judge effectively denied both parties the right to any meaningful opportunity in the trial court to have fundamental errors corrected as they occurred.

■ Again, we must observe the necessity for the presence of a court reporter at proceedings such as this crucial pre-hearing office conference. In *Bailey v. State*, Del.Supr., 440 A.2d 997 (1982), we said:

The absence of a complete record of all pertinent exchanges between a Trial Court and counsel is particularly distressing in a case of this magnitude and is not unlikely to constitute reversible error in a foreseeable situation. *See State v. White*, Del.Supr., 395 A.2d 1082, 1095 (1978).

440 A.2d at 1000 n. 1.

Although no prejudice to the defendant's substantial rights has been alleged,[3] we note that by our March 27, 1984 directive such office conferences should be recorded:

All sidebar conferences and chambers conferences during trial shall be recorded unless the trial judge determines, in advance, that neither evidentiary nor substantive issues are involved.

### B.

■ Even if the trial judge believed that some rational legal and factual basis existed to reimpanel the same jury, the total inadequacy of the voir dire conducted here belies the suggestion. Ordinarily, it is within the discretion of the trial judge to determine the extent of voir dire examination of prospective jurors. *Hughes v. State*, Del.Supr., 490 A.2d 1034, 1049 n. 10 (1985); *Whalen I*, 434 A.2d at 1349. However, "[t]he exercise of this broad discretion is nevertheless subject to the essential demands of fairness". *Parson v. State*, Del. Supr., 275 A.2d 777, 780 (1971). The concerns that arise when a jury is reimpaneled for a second hearing, over four years after the original trial, include the issues of whether the jurors' original jury service or some other subsequent event affected their ability to render a fair and impartial verdict. Without adequate voir dire, the trial

---

**2.** Specifically, the Florida Court noted:

[W]e find authority for such procedure in that portion of Subsection 921.141(1), Florida Statutes, which states:

"... If the trial jury has been waived or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury impaneled for that purpose, unless waived by the defendant...."

Also, by Chapter 74–379, Laws of Florida, effective October 1, 1974, the following language was added to Subsection 921.141(1), Florida Statutes:

"... If, through impossibility or inability, the trial jury is unable to reconvene for a hearing on the issue of penalty, having determined the guilt of the accused, the trial judge may summon a special juror or jurors as provided in Chapter 913 to determine the issue of the imposition of the penalty...."

*Messer v. State*, Fla.Supr., 330 So.2d 137, 142–43 (1976).

**3.** *See Jensen v. State*, Del.Supr., 482 A.2d 105 (1984); *Ross v. State*, Del.Supr., 482 A.2d 727 (1984) (requiring a showing that prejudice resulted from the failure to record a portion of a trial proceeding for reversible error to be found).

judge was unable to give appropriate consideration to these concerns.

Instead of asking any of the voir dire questions prepared by the defendant, the judge merely instructed the jury as a group that "it is required that you put out of your mind the prior penalty hearing". The court went on to say: "Since that hearing, new guidelines have been established and a new hearing is required. It is necessary that you approach this hearing impartially and with an open mind and fix the penalty to be imposed based only upon what you hear and see at this hearing." The judge concluded with the following single question: "Is there any reason why any juror cannot be impartial and give the defendant a fair hearing regardless of what you may have previously seen, read or heard?"

■■■ This final single inquiry was not an adequate substitute for specific voir dire questions. It is not the responsibility of the jurors to decide completely on their own whether they are impartial. This Court has stated that "[t]he purpose of the *voir dire* examination of prospective jurors is to give the *trial judge* sufficient information to determine whether or not a prospective juror is qualified". *Parson v. State*, 275 A.2d at 780 (emphasis added). The judge illicited no information from the jurors other than the fact that they apparently did not believe that they were biased.

Since the penalty phase of a capital conviction usually occurs immediately after the verdict of guilt, further voir dire ordinarily is unnecessary. But when almost five years have elapsed since the original trial, and the same jurors have participated in a tainted penalty phase, at a minimum the trial judge must see that an adequate voir dire is conducted to ensure that such jurors continue to meet the tests of fairness and impartiality required by our law. To do otherwise is a clear and serious abuse of discretion mandating reversal.

## III.

The defendant also contends that the trial judge's instructions to the jury at the second penalty hearing were constitutionally inadequate. Specifically, Whalen argues that the charge failed to accurately instruct the jury about the role of mitigating circumstances, and that a life sentence could be recommended even though a statutory aggravating circumstance had been found by the panel.

■■■ It is well settled in Delaware that, "[t]he test for determining the propriety of a jury instruction does not demand perfection." *Haas v. United Technologies Corp.*, Del.Supr., 450 A.2d 1173, 1179 (1982). *See also Franklin v. Salminen*, Del.Supr., 222 A.2d 261, 263 (1966); *Baker v. Reid*, 57 A.2d 103, 109 (1947). This Court has stated that jury instructions are adequate if they are such as to "enable the jury to intelligently perform its duty in returning a verdict". *Storey v. Castner*, Del.Supr., 314 A.2d 187, 194 (1973).

Obviously, instructions play a critical role in the penalty phase of a capital case. The United States Supreme Court has stated that such sentencing procedures must not create "a substantial risk that the [death penalty will] be inflicted in an arbitrary and capricious manner". *Gregg v. Georgia*, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (plurality opinion). Discretion in sentencing may not be eliminated completely, but must instead be "directed and limited". *Id.* at 189, 96 S.Ct. at 2932. Thus, it is the trial judge's duty to guide the jury's discretion by ensuring that they understand the bases for imposing a death sentence, and comprehend their responsibilities in applying such criteria. It is only through the careful use of jury instructions that the judge properly discharges this function.

■■■ Under Delaware's law, based on that approved by the United States Supreme Court in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976),[4]

---

**4.** For a more complete discussion of the history of Delaware's current death penalty statute see,

following a guilty verdict for First Degree Murder, a separate penalty hearing is conducted to determine whether the defendant will be sentenced to death or life imprisonment without probation or parole. 11 *Del.C.* § 4209(b)(1). Section 4209 of the Delaware Death Penalty Statute provides in part:

A sentence of death shall not be imposed unless the jury or judge, where appropriate, finds:

a. Beyond a reasonable doubt at least 1 statutory aggravating circumstance; and

b. Unanimously recommends, after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed. Where the jury, or judge when applicable, submits such a finding and recommendation, the Court shall sentence the defendant to death as provided by subsection (f) of this section. A finding by the jury of a statutory aggravating circumstance, and a consequent recommendation of death, supported by the evidence, shall be binding on the Court.

11 *Del.C.* § 4209(d)(1). To impose a death sentence, the jury must engage in a two-step analysis: (1) an initial finding of the existence of at least one statutory aggravating circumstance, and (2) the weighing of such factor(s) against any mitigating circumstances found to exist. Unless the jury unanimously concludes that the aggravating circumstances outweigh those in mitigation, the death penalty cannot be imposed.

■ Thus, jury instructions must clearly convey the point that whenever an aggravating circumstance is found, this two-part analysis still permits the jury to recommend against the death penalty no matter what aggravating circumstances are found to exist. Finally, if the jury does not unanimously agree on a death sentence it must understand that the court will impose life imprisonment without benefit of probation or parole. 11 *Del.C.* § 4209(d)(3). All of this information is essential to a proper discharge of the jury's function.

Here, the jurors were correctly informed that as part of their analysis in deciding whether to impose death, they first were required to find at least one statutory aggravating circumstance—in this case that the murder occurred during the commission of a rape.[5]

■ With the establishment of a statutory aggravating circumstance, the function of weighing any mitigating circumstances against any aggravating circumstances was required. The defendant argues that the court failed to adequately define the concepts of aggravating and mitigating circumstances and to inform the jury of the role of mitigating circumstances in its determination of the appropriate penalty.

In his charge to the jury, the trial judge made the following references to the jury's consideration of mitigating circumstances:

In reaching your determination, the jury may consider any mitigating or aggravating circumstances raised by the evidence either at this hearing or at the trial.

The sentence of death shall not be imposed unless you find unanimously and beyond a reasonable doubt at least one statutory aggravating circumstance and then unanimously recommend after weighing all the relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the

*Flamer v. State*, Del.Supr., 490 A.2d 104, 121–23 (1984).

**5.** Pursuant to 11 *Del.C.* § 4209(e)(2) the jury also should have been instructed that the exist-

ence of a statutory aggravating circumstance had been established by the defendant's conviction of murder in the first degree in violation of 11 *Del.C.* § 636(a)(2).

character and propensities of the offender that a sentence of death be imposed.

An understanding of the importance of mitigating and aggravating circumstances in the jury's deliberations is crucial to Delaware's statutory scheme. The United States Supreme Court has upheld those death penalty statutes that require "consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death". *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). In *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Court stated that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death". *Lockett v. Ohio*, 438 U.S. at 604, 98 S.Ct. at 2964–65 (citations omitted) (emphasis in original). *See also, Bell v. Ohio*, 438 U.S. 637, 642, 98 S.Ct. 2977, 2980, 57 L.Ed.2d 1010 (1978) (plurality opinion).

The United States Court of Appeals for the Fifth Circuit has reasoned that:

> [The Supreme Court's conclusion that there is a] constitutional requirement to allow consideration of mitigating circumstances would have no importance, of course, if the sentencing jury is unaware of what it may consider in reaching its decision. *We read Lockett and Bell, then, to mandate that the judge clearly instruct the jury about mitigating circumstances and the option to recommend against death.*

*Chenault v. Stynchcombe*, 581 F.2d 444, 448 (5th Cir.1978) (emphasis added).

The Fifth Circuit has also stated that the jury instructions must "clearly [communicate] that the law recognizes the existence of circumstances which do not justify or excuse the offense, but which, in fairness

or mercy, may be considered as extenuating or reducing the degree of moral culpability and punishment...." *Spivey v. Zant*, 661 F.2d 464, 471 n. 8 (5th Cir.1981).

The mere fact that the terms "aggravating" and "mitigating" circumstances were not defined does not in and of itself amount to reversible error. But it is insufficient to use the terms "aggravating" and "mitigating" circumstances without further instructions as to their role under our death penalty statute. We conclude that the trial court's instructions in effect, amounted to no more than reading the relevant portions of 11 *Del.C.* § 4209 to the jury. This was inadequate. As the United States Supreme Court has repeatedly made clear, the jury's discretion in capital cases must be guided by concrete factors (statutory aggravating circumstances) and other circumstances of the crime (aggravating and mitigating circumstances).

▇▇▇▇ While both the State and defense counsel stressed fairness and mercy, and the defense argued circumstances that allegedly mitigated the punishment, this is not an adequate substitute for complete jury instructions. *Taylor v. Kentucky*, 436 U.S. 478, 488–89, 98 S.Ct. 1930, 1936–37, 56 L.Ed.2d 468 (1978).

As the North Carolina Supreme Court has recognized:

> Juries are to be guided in this process by a carefully defined set of statutory criteria that allow them to take into account the nature of the crime and the character of the accused. Thorough jury instructions, which incorporate and reflect the definitions accorded to these criteria and which are fully applied to the facts of each case, must be given. In each case the process must be directed toward the jury's having a full understanding of both the relevant aggravating and mitigating factors and the necessity of balancing them against each other in determining whether to impose the death penalty.

*State v. Johnson,* N.C.Supr., 298 N.C. 47, 257 S.E.2d 597, 610 (1979). Under the circumstances it is clear that the jury instructions given in this second penalty hearing failed to adequately guide and focus the jury's consideration of the statutory criteria for the imposition of a death sentence.

The related third aspect of our law is that under any circumstance the jury retains the option to impose a sentence of life imprisonment without probation or parole. It is essential that this be conveyed to the panel.

Once again, the fact that the jury instructions made only glancing reference to the critical two-stage analysis anticipated by Section 4209 is relevant. The jury must understand that even after a statutory circumstance has been found to exist, it must make a second, separate finding regarding the penalty to be imposed. The court's statement, "[i]f you do not recommend the death penalty, a sentence of life imprisonment will be imposed", is not sufficient to indicate that such a sentence can be imposed even if a statutory aggravating factor is found.

> The Georgia Supreme Court has stated: [I]n considering the adequacy of a jury charge on the sentencing phase of the trial, the ultimate test is whether a reasonable juror, considering the charge as a whole, would know that he should consider all the facts and circumstances of the case as presented during both phases of the trial (which necessarily include any mitigating and aggravating facts), and then, *even though he might find one or more of the statutory aggravating circumstances to exist, would know that he might recommend life imprisonment.*

*Spivey v. State,* Ga.Supr., 241 Ga. 477, 246 S.E.2d 288, 291 (1978), *cert. denied,* 439 U.S. 139, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978) (emphasis added). *See also Chenault v. Stynchcombe,* 581 F.2d 444 (5th Cir.1978). Under the circumstances it is apparent that the court's instructions to the jury failed to adequately convey the legal principle that it retained the option to recommend life imprisonment despite any aggravating factors found to exist. That, too, is reversible error.

 Finally, the defendant argues that the instructions did not adequately inform the jurors that a failure to unanimously agree on the imposition of the death penalty, would result in a sentence of life imprisonment without benefit of probation or parole. 11 *Del.C.* § 4209(d)(3). In capital cases the jurors must be "fully informed of the consequences of their votes and the penalties which could result in each eventuality". *State v. Williams,* La.Supr., 392 So.2d 619, 634 (1980).

 Here, the court instructed the jury, "If you do not recommend the death penalty, a sentence of life imprisonment without benefit of probation or parole will be imposed." In terms of the Delaware statute this instruction could have been clearer—and it should have been. Without more, it implies that the jury had to be unanimous in imposing a life sentence. Clearly, that is not the law.

Thus, we must conclude that these jury instructions were prejudicial in their failure to accurately reflect the provisions of 11 *Del.C.* § 4209. Specifically, they did not clearly and explicitly instruct the jury on mitigating and aggravating circumstances, the role of those factors in the jury's deliberation, and the jury's option to impose death or life imprisonment. This failure to provide the jury with accurate, explicit instructions was a substantial denial of the defendant's constitutional rights, and mandates reversal.

### IV.

Aside from his procedural challenges, Whalen also contends that a death sentence for felony murder is unconstitutional. Here, the defendant's conviction is predicated upon 11 *Del.C.* § 636, which provides in pertinent part:

> (a) A person is guilty of murder in the first degree when:

(2) In the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, he recklessly causes the death of another person;

11 *Del.C.* § 636(a)(2).

### A.

Whalen argues that the death penalty is cruel and unusual punishment for one who has no proven intent to cause a victim's death.[6] Section 636(a)(2) [the "felony murder statute"] does not require any showing that the defendant intended to kill, but only that he *recklessly* caused the death of another person.

The defendant's constitutional challenge is premised on *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), which held that a death sentence was violative of the Eighth and Fourteenth Amendments to the Constitution when imposed upon an accomplice to a felony murder "who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Id.* at 797, 102 S.Ct. at 3376–77. The defendant in *Enmund* was convicted of two counts of first degree murder for his role in a robbery in which two people were shot. Enmund waited in the getaway car while his two accomplices committed the actual robbery and the killings. There was no evidence that Enmund or his accomplices intended or contemplated that any killings would occur when they planned the robbery. The jury found Enmund guilty of first degree murder and sentenced him to die for his role as an accomplice to a felony

during the course of which a death occurred.

Whalen claims that *Enmund* abolished the death penalty for felony murder. However, we do not interpret *Enmund* as having such a sweeping effect.

In our view *Enmund* was carefully limited to its fact situation. Specifically, the Court held that the imposition of the death penalty was a cruel and unusual punishment for a defendant who was found guilty only vicariously as a felony murderer. The Supreme Court stressed throughout the opinion that Enmund *"did not actually kill,* attempt to kill, or intend to kill." *See Enmund,* 458 U.S. at 787, 793, 795, 796, 797, 798, 799; 102 S.Ct. at 3371, 3374, 3375, 3376–77, 3377, 3378, 3379. This repeated emphasis on the fact that Enmund's conduct was not directly related to the killings is significant.[7] It is also in sharp contrast to Whalen's crime. He broke into a house and raped a frail old woman, during the course of which he brutally strangled her.

In *Enmund,* the Supreme Court recognized that "[t]he death penalty is said to serve two principal social purposes: retribution and deterrence of capital crimes by prospective offenders." 458 U.S. at 798, 102 S.Ct. at 3377 (quoting *Gregg v. Georgia,* 428 U.S. at 183, 96 S.Ct. at 2929–30). As to deterrence, the Court stated that, "[w]e are quite unconvinced, however, that the threat that the death penalty will be imposed for murder will measurably deter *one who does not kill* and has no intention or purpose that life be taken." 458 U.S. at 798–99, 102 S.Ct. at 3377 (emphasis added). Although the Court did discuss premedita-

---

**6.** The Eighth Amendment to the United States Constitution which was made applicable to the states by the Fourteenth Amendment provides:
 "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted".
 The United States Supreme Court has stated that "[t]he Cruel and Unusual Punishment Clause of the Eighth Amendment is directed, in part, 'against all punishments which by their excessive length or severity are greatly disproportioned to the offenses charged.'" *Enmund,* 102 S.Ct. at 3372, quoting *O'Neil v. Vermont,* 144

U.S. 323, 339–340, 12 S.Ct. 693, 699–700, 36 L.Ed. 450 (1892) (Field, J., dissenting).

**7.** The *Enmund* decision also focuses on the fact that Enmund did not intend to kill the victims. This does not alter our conclusion that *Enmund* is limited to holding the death penalty unconstitutional for perpetrators of a felony in which a death occurs, when a specific defendant did not actually kill *or* by reason of the surrounding facts cannot be said to have intended that a killing result.

tion and deliberation, it went on to state that its conclusion as to accomplice liability would be different if the likelihood of a death occurring during the course of a robbery was more substantial. *Id.* at 799, 102 S.Ct. at 3378. *Citing* ALI, Model Penal Code § 210.2, Comment at 38 and n. 96 (Official Draft and Revised Comments 1980). The factual distinctions between *Enmund* and this case are again relevant. The jury's finding of Whalen's guilt was premised entirely on Whalen's conduct. He was the sole perpetrator of this crime. His actions included breaking and entering his neighbor's house late at night. She was 92 years old, weighed 75 lbs., and was 5'4" tall. The victim, Mrs. Kemp, was blind, almost totally deaf, and lived with her invalid husband. The undisputed medical evidence shows that she was raped and died of manual strangulation. There were lacerations and hemorrhages in her vaginal area, sperm was found on her pubic hairs, and the autopsy revealed numerous tiny hemorrhages on the eyelids, within the muscles of the neck and in the lining of the larynx. There were bruises, primarily on the right side of her neck, indicative of strangulation with a person's left hand.

All of this is consistent with Whalen's confession. He used a pocket knife to cut the screen of an open window through which he entered the Kemp house. Mrs. Kemp confronted him at the bedroom door. Whalen then grabbed her throat with his left hand and pushed Mrs. Kemp back on her bed. He kept choking her, laid down on top of her, pulled her nightgown up and unzipped his pants. He reached a climax and ejaculated. Although Whalen denied any penetration, the undisputed medical evidence of lacerations in Mrs. Kemp's vaginal area clearly supports a contrary conclusion. In short this was a vicious attack by the defendant upon his victim, resulting in her death. Nothing in *Enmund* seems intended to spare Whalen from the full measure of consequences which Delaware law exacts for his crimes.

■ While the Supreme Court has said that rape, by itself, is not punishable by death, *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), in this case, specific aspects of the rape indicate that the defendant could expect that his victim might die. Once again, we focus on Whalen's rape of a very frail old woman while simultaneously strangling her. Thus, nothing in *Enmund* or *Coker* suggests invalidity of the rebuttable presumption under Delaware law that a person is presumed to intend the natural and probable consequences of his act. *See* 11 *Del.C.* §§ 306(c)(1), 307. *Winborne v. State*, Del. Supr., 455 A.2d 357, 360 (1982).

■ As to the second goal of the death penalty, retribution, *Enmund* stated that the degree of a defendant's culpability is relevant to the determination of whether retribution is a valid justification for execution. *Enmund*, 458 U.S. at 800, 102 S.Ct. at 3378. An individual's culpability is determined by reference to his intentions, expectations and actions. *Id.* From Whalen's actions there can be little doubt of his intentions and expectations. His culpability for the death that resulted here is far different from Enmund's.

There is a further relevant distinction between *Enmund* and this case. As the Court noted in *Enmund*, Delaware requires "some culpable mental state with respect to the homicide as a prerequisite to conviction of a crime for which the death penalty is authorized." *Id.* at 3373 (citing 11 *Del.C.* § 636(a)(2)). Specifically, Delaware requires the jury to find that the defendant recklessly caused another's death. 11 *Del.C.* § 636(a)(2). In contrast, the Florida statute under attack in *Enmund* required no culpable mental state, either as a prerequisite to conviction for a felony murder, or imposition of the death penalty for that crime. Fla.Stat. §§ 782.-04(1)(a), 775.082(1), 921.141(5)(d). Moreover, under Delaware law the element of recklessness could be established from evidence that, by reason of Whalen's surrounding conduct, he intentionally or know-

ingly caused Mrs. Kemp's death. Thus, 11 *Del.C.* § 253 provides in pertinent part:

> When recklessness suffices to establish an element of an offense, the element also is established if a person acts intentionally or knowingly. . . .

Clearly, on this record there is ample evidence upon which a jury could conclude that Whalen acted intentionally, thereby satisfying not only the element of recklessness, but also the constitutional standard of "some culpable mental state" upon which a death sentence can be predicated for felony murder.

As Whalen acknowledges, the vast majority of the cases that have addressed *Enmund* claims in a felony murder context are not helpful because they involved multiple defendants with varying degrees of culpability. *See, e.g. Stephens v. Kemp,* 721 F.2d 1300, 1303 (11th Cir.1983); *Skillern v. Estelle,* 720 F.2d 839, 843–849 (5th Cir. 1983); *Hall v. Wainwright,* 565 F.Supp. 1222, 1235–1237 (M.D.Fla.1983), *rev'd in part, aff'd in part,* 733 F.2d 766 (11th Cir.1984); *Jones v. Thigpen,* 555 F.Supp. 870, 877–878 (S.D.Miss.1983), *rev'd in part, aff'd in part,* 741 F.2d 805 (5th Cir.1984); *State v. Smith,* Ariz.Supr., 138 Ariz. 79, 673 P.2d 17, 23 (1983); *Ruffin v. State,* Fla.Supr., 420 So.2d 591, 594–595 (1982); *Williams v. State,* Ga.Supr., 250 Ga. 553, 300 S.E.2d 301, 309 (1983); *State v. Gibson,* Idaho Supr., 100 Idaho 54, 675 P.2d 33, 41–42 (1983); *Leatherwood v. State,* Miss. Supr., 435 So.2d 645, 655–656 (1983); *Hatch v. State,* Okla.Crim.App., 662 P.2d 1377, 1382–1383 (1983); *State v. Yates,* S.C. Supr., 310 S.E.2d 805, 812–813 (1982); *Osborn v. State,* Wyo.Supr., 672 P.2d 777, 792–795 (1983).

The few opinions involving single defendants have rather summarily rejected the defendant's claim. In *Adams v. Wainwright,* 709 F.2d 1443 (11th Cir.1983), the Eleventh Circuit concluded that the death

penalty was not excessive or disproportionate for a defendant who, acting alone, savagely beat his victim to death. 709 F.2d at 1447. *See also State v. Jordan,* Ariz.Supr., 137 Ariz. 504, 672 P.2d 169 (1983); *State v. Koon,* S.C.Supr., 278 S.E.2d 528, 298 S.E.2d 769 (1982).

In conclusion we find that the death penalty is not a grossly disproportionate and excessive punishment for a defendant found guilty of felony murder, who actually killed his victim under the circumstances present here. We note that such a conclusion comports with the requirement that a defendant's punishment "be tailored to his personal responsibility and moral guilt." *Enmund,* 458 U.S. at 801, 102 S.Ct. at 3378.

## B.

■ In a related argument, Whalen contends that it is unconstitutional to use the underlying rape both as an essential element in his felony-murder conviction and as a statutory aggravating circumstance. He argues that a statutory scheme is defective which subjects a class of defendants convicted of a reckless murder to a greater probability of death than a class of defendants convicted of intentional murder.

Under Delaware's statute a defendant will be found guilty of first degree murder if he either commits an intentional killing or *inter alia* if he recklessly causes another's death during the commission of a felony. *See* Appendix A. Pursuant to 11 *Del.C.* § 4209(e)(1) a defendant is not subject to the death penalty unless one of the listed aggravating circumstances is proven beyond a reasonable doubt. However, in certain cases of first degree murder a statutory aggravating circumstance is automatically established by the defendant's conviction, and the jury must be so instructed.[8] The alleged "unfairness"

---

**8.** The jury at Whalen's second penalty hearing was not instructed that the defendant's conviction of first degree murder pursuant to § 636(a)(2) established the existence of a statutory aggravating circumstance as required by 11 *Del.C.* § 4209(e)(2). However, the judge's instruction that the jury could "consider as a statutory aggravating circumstance that the murder

claimed here is that a defendant convicted of first degree murder pursuant to Section 636(a)(2) will always be eligible for the death penalty, while a defendant found guilty of intentional murder, 11 *Del.C.* § 636(a)(1), without the presence of a statutory aggravating circumstance, faces no death sentence.

Whalen urges us to accept the conclusion that "the underlying felony should [not] be submitted to the jury as an aggravating circumstance in the sentencing phase when it was the basis for, and an element of, a capital felony conviction." *State v. Cherry*, N.C.Supr., 298 N.C. 86, 257 S.E.2d 551, 567 (1979). But we do not find *Cherry* persuasive. The North Carolina Supreme Court began its discussion with a double jeopardy-type analysis, although it acknowledged that the issue was not strictly a double jeopardy problem. The essence of the *Cherry* ruling is that:

A defendant convicted of a felony murder, nothing else appearing, will have one aggravating circumstance "pending" for no other reason than the nature of the conviction. On the other hand, a defendant convicted of a premeditated and deliberated killing, nothing else appearing, enters the sentencing phase with no strikes against him. This is highly incongruous, particularly in light of the fact that the felony murder may have been unintentional, whereas, a premeditated murder is, by definition, intentional and preconceived.

*Cherry*, 298 N.C. 86, 257 S.E.2d at 567. The court felt, however, that this was a flaw in the statute that could be obviated with a "double jeopardy-merger-type analysis". The Court reasoned:

Once the underlying felony has been used to obtain a conviction of first degree murder, it has become an element of that crime and may not thereafter be the basis for additional prosecution or

sentence. *Neither do we think the underlying felony should be submitted to the jury as an aggravating circumstance in the sentencing phase when it was the basis for, and an element of, a capital felony conviction.*

*Id.* (emphasis added).

We agree with the initial observation of the North Carolina Supreme Court that this is not a double jeopardy problem. Further, the merger-type analysis is hardly viable in Delaware because, in contrast to the law of North Carolina, a defendant in Delaware can be convicted and punished for both felony murder and the underlying felony. *See Whalen I*, 434 A.2d 1346; *Hunter v. State*, Del.Supr., 430 A.2d 476 (1981). Thus, we consider a double jeopardy analysis unhelpful.

Despite North Carolina's analogy to double jeopardy problems, its final holding was based on the disproportionality of automatically imposing a statutory aggravating circumstance in cases of felony murder, when the same would not apply to a premeditated killing: "the possibility that a defendant convicted of a felony murder will be sentenced to death is disproportionately higher than the possibility that a defendant convicted of a premeditated killing will be sentenced to death due to the 'automatic' aggravating circumstance dealing with the underlying felony." *Cherry*, 257 S.E.2d at 568. It is this proportionality argument to which we now turn.

Relying on *Cherry*, the defendant urges us to find that the disparate treatment of unintentional murder, presumably based on an element of recklessness, and intentional murder, presumably based on some form of premeditation, makes application of the death penalty so disproportionate as to become cruel and unusual punishment. Specifically, the defendant urges that a conviction for felony murder, supported by proof

occurred during the commission of a rape" amounts to essentially the same instruction in this case. This is because rape was an essential element of the murder for which Whalen was found guilty. Accordingly, our discussion is based on the assumption that a statutory aggravating circumstance was automatically established when Whalen was found guilty of first degree murder pursuant to 11 *Del.C.* § 636(a)(2).

of reckless conduct, is more likely to result in the death penalty, even though such a conviction requires a lesser state of mind, and hence, less culpability.

In part, the answer to this is found in our *Enmund* analysis (see pages 563–565). Moreover, the United States Supreme Court has focused primarily on two related concerns when determining whether application of the death penalty is a cruel and unusual punishment forbidden by the Eighth Amendment. First, the Court has held that a death penalty statute is unconstitutional if it does not "minimize the risk of wholly arbitrary and capricious action" by directing and limiting the discretion of the sentencing jury. *Gregg,* 428 U.S. at 189, 96 S.Ct. at 2932. *See also, Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2950, 49 L.Ed.2d 913 (1976); *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 913 (1976). Thus, the Supreme Court has concluded that the death penalty must not be applied disproportionately among similar defendants. The Supreme Court has also ruled that the death penalty is unconstitutional in those situations where the punishment is grossly disproportionate and excessive for the crime committed. *Enmund,* 458 U.S. at 815, 102 S.Ct. at 3386; *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). In *Pulley v. Harris,* — U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the Supreme Court stated:

> Traditionally, "proportionality" has been used with reference to an abstract evaluation of the appropriateness of a sentence for a particular crime. Looking to the gravity of the offense and the severity of the penalty, to sentences imposed for other crimes, and to sentencing practices in other jurisdictions, this Court has occasionally struck down punishments as inherently disproportionate, and therefore cruel and unusual, when imposed for a particular crime or category of crime.

104 S.Ct. at 875.

The defendant contends that the death penalty is unconstitutionally disproportionate as it is applied under our statutory scheme. He argues that the result of allowing the underlying felony to act as an automatic statutory aggravating circumstance is that a defendant with no proven intent to kill is more likely to receive the death penalty than a defendant convicted of intentional murder. The defendant also notes that the United States Supreme Court has stated that "It is fundamental that 'causing harm intentionally must be punished more severely than causing the same harm unintentionally.'" *Enmund,* 102 S.Ct. at 3377 (*quoting* H. Hart, Punishment and Responsibility 162 (1968)). Thus, Whalen argues that Delaware's statutory scheme is both cruel and unusual because, relative to the culpability of the crimes involved, disproportionate punishments may result.

We disagree and conclude that our statutory scheme does not impose the death penalty in a disproportionate manner. The fact that all murderers are not automatically eligible for the death penalty is intentional. The statutory aggravating circumstances were designed to limit the category of "death-eligible" defendants to those persons who caused another's death under circumstances of enhanced culpability. We cannot say that this legislative policy is unreasonable, unjust, or unconstitutional. It is a recognition that certain crimes, including the commission of a felony murder, should expose the actual killer to a death sentence. Thus, one who kills while committing a rape or an armed robbery is considered more culpable than one who takes a life under less aggravating circumstances. Given the Delaware statute requiring a reckless state of mind, which can be proved by intentional conduct, and the facts of this case, one can hardly say that a death sentence is disproportionate to Whalen's crime. Moreover, the defendant has the opportunity to present any mitigating factors that might weigh against a statutory factor, and in any event, the jury is never required to impose the death penalty.

Thus, we conclude that it is not unconstitutional to allow consideration of the underlying felony as a statutory aggravating circumstance in a felony-murder case. All defendants convicted of first degree murder are eligible for the death penalty if the jury, following its guided discretion, finds the existence of a statutory aggravating circumstance, and based on the entire record, concludes that the death penalty is warranted. This approach ensures that a death sentence will not be imposed in violation of the Eighth Amendment.

The decisions of several other jurisdictions support our conclusion. In *Adams v. Wainwright*, 709 F.2d 1443 (11th Cir.1983), the Eleventh Circuit rejected the defendant's argument that Florida had made the "death penalty the 'automatically preferred sentence' in any felony murder case." *Id.* at 1447. That court held:

> The short answer is that the United States Supreme Court has upheld the Florida death penalty statute, including necessarily the use of this statutory aggravating factor. *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Florida does not mandate the death penalty in all felony murder cases. The defendant is not precluded under Florida law from presenting any mitigating factors.

*Id.* at 1447. The Mississippi Supreme Court has rejected the similar argument that requiring a defendant to enter the sentencing phase without a clean slate brings us "precariously close to the old ways of mandatory, arbitrary statutes condemned in *Furman....*" *Leatherwood v. State,* Miss.Supr., 435 So.2d 645, 650 (1983) (citations omitted). The court reasoned that:

> [W]hen an accused is found guilty of capital murder arising out of a robbery, he then becomes *subject* to a jury finding that he should be executed if the jury feels that the facts justify it. However, his execution is not mandated and the jury may properly find that he should be sentenced to life in prison. They may so

find whether the defendant puts on any evidence of mitigating circumstances or not.

*Id.* (emphasis in original). *See also, People v. Kubat,* Ill.Supr., 94 Ill.2d 437, 69 Ill.Dec. 30, 447 N.E.2d 247 (1983); *State v. Laney,* Tenn.Supr., 654 S.W.2d 383 (1983); *State v. Pritchett,* Tenn.Supr., 621 S.W.2d 127 (1981).

In conclusion we hold that the death penalty is not a cruel and unusual punishment for a defendant, like Whalen, found guilty of felony murder pursuant to 11 *Del.C.* § 636(a)(2).

### V.

The remaining issues the defendant raises may be dealt with summarily.

### A.

Whalen contends that the trial judge erred in refusing to dismiss the case for failure to hold a speedy penalty hearing. This argument is without merit. After reversal of the defendant's original death sentence, the penalty issue was remanded to the Superior Court on July 6, 1981. On October 14, 1982, the defendant moved to dismiss on speedy trial grounds. This motion was denied and eleven days later a second penalty hearing was held on October 25, 1982.

Although "[t]here is no definitive decision as to whether the Sixth Amendment guarantee of a speedy trial applies to the interval between conviction ... and sentencing", *Johnson v. State,* Del. Supr., 305 A.2d 622 (1973), we will follow *Johnson* and assume the existence of a right to speedy sentencing. In *Johnson,* we applied the test for pre-trial delay set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 31 L.Ed.2d 101 (1972). That test requires a balancing of the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. We conclude that, given the defendant's very late assertion of this

right and the absence of a showing of any substantial prejudice to him, the trial judge's refusal to dismiss was proper.

### B.

 We also reject the defendant's contention that the prosecutor's closing comments were calculated to inflame the passions of the jury so as to violate the defendant's right to a fair penalty hearing. We agree with the defendant that some of the prosecutor's closing comments were inappropriate. For example, the prosecutor should not have referred to the "number of years" the jurors had to think about the case. If anything, this tends to highlight one of the problems inherent in reimpaneling the same jury. The prosecutor also erred in discussing the mitigating factors the defense offered as insufficient "to mitigate and *excuse* ". Mitigating factors are not offered to excuse the defendant's conduct and the prosecutor's comment was both misleading and inappropriate. However, as this Court has noted, "[n]ot every improper remark by a prosecutor requires reversal, but only that which prejudicially affects substantial rights of the accused." *Sexton v. State*, Del.Supr., 397 A.2d 540, 544 (1979). Given the other substantial reversible errors here, we cannot say that the cumulative effect of the prosecutor's remarks materially prejudiced the defendant.

### C.

The defendant also contends that the death penalty was disproportionately applied under the specific facts of his case. *See Flamer v. State*, Del.Supr., 490 A.2d 104 (1984). However, in light of our remand for a new penalty hearing, we consider this issue premature.

### D.

 The defendant's contention that death by hanging, as required by 11 *Del.C.* § 4209(f), is cruel and unusual in violation of the Eighth and Fourteenth Amendments, was not raised below as required by Supreme Court Rule 8. It will not be considered at this juncture. Furthermore, the issue presently is moot because of our remand for a new sentencing hearing.

### E.

Finally, the defendant requests that his death sentence be vacated with instructions upon remand that a life sentence be imposed. While we vacate the sentence of death we find no basis for such instruction. Instead we remand with instructions that the entire penalty question be retried before a new jury.

\* \* \*

The sentence of death is VACATED and the case is REMANDED for a new penalty hearing in conformance with this opinion.

### Appendix A.

**§ 4209. Punishment, procedure for determining punishment, review of punishment and method of punishment for first-degree murder.**

(a) *Punishment for first-degree murder.*—Any person who is convicted of first-degree murder shall be punished by death or by imprisonment for the remainder of his or her natural life without benefit of probation or parole or any other reduction, said penalty to be determined in accordance with this section.

(b) *Separate hearing on issue of punishment for first-degree murder.*—

(1) Upon a conviction of guilt of a defendant of first-degree murder, the Superior Court shall conduct a separate hearing to determine whether the defendant should be sentenced to death or to life imprisonment without benefit of probation or parole as authorized by subsection (a) of this section. If the defendant was convicted of first-degree murder by a jury, this hearing shall be conducted by the trial judge before that jury as soon as practicable after the return of the verdict of guilty. Alternate jurors shall not be excused from the case prior to submission of the issue of guilt to the

trial jury and shall remain separately sequestered until a verdict on guilt is entered. If the verdict of the trial jury is guilty of first-degree murder said alternates shall sit as alternate jurors on the issue of punishment. If, for any reason satisfactory to the Court, any member of the trial jury is excused from participation in the hearing on punishment, the trial judge shall replace such juror or jurors with alternate juror or jurors. If a jury of 12 jurors cannot participate in the hearing a separate and new jury, plus alternates, shall be selected for the hearing in accordance with the applicable rules of the Superior Court and laws of Delaware, unless the defendant(s) and the State stipulate to the use of a lesser number of jurors.

(2) If the defendant was convicted of first-degree murder by the Court, after a trial and waiver of a jury trial or after a plea of guilty or nolo contendere, the hearing shall be conducted by the trial judge before a jury, plus alternates, empaneled for that purpose and selected in accordance with the applicable rules of the Superior Court and laws of Delaware, unless said jury is waived by the State and the defendant in which case the hearing shall be conducted, if possible, by and before the trial judge who entered the finding of guilty or accepted the plea of guilty or nolo contendere.

(c) *Procedure at punishment hearing.—*

(1) The sole determination for the jury or judge at the hearing provided for by this section shall be the penalty to be imposed upon the defendant for the conviction of first-degree murder. At the hearing, evidence may be presented as to any matter that the Court deems relevant and admissible to the penalty to be imposed. The evidence shall include matters relating to any mitigating circumstance and to any aggravating circumstance, including, but not limited to, those aggravating circumstances enumerated in subsection (e) of this section. Notice in writing of any aggravating cir-

cumstances and any mitigating circumstances shall be given to the other side by the party seeking to introduce evidence of such circumstances prior to the punishment hearing, and after the verdict on guilt, unless in the discretion of the Court such advance notice is dispensed with as impracticable. The record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant or the absence of any such prior criminal convictions and pleas shall also be admissible in evidence.

(2) At the hearing the Court shall permit argument by the State, the defendant and/or his counsel, on the punishment to be imposed. Such argument shall consist of opening statements by each, unless waived, opening summation by the State, rebuttal summation by the defendant and/or his counsel and closing summation by the State.

(3) Upon the conclusion of the evidence and arguments the judge shall give the jury appropriate instructions and the jury shall retire to determine the punishment to be imposed.

(4) In the instructions to the jury the Court shall include instructions for it to weigh and consider any mitigating circumstances or aggravating circumstances and any of the statutory aggravating circumstances set forth in subsection (e) of this section which may be raised by the evidence. The jury shall be instructed to weigh any mitigating factors against the aggravating factors.

(d) *Determination of sentence.—*

(1) A sentence of death shall not be imposed unless the jury or judge, where appropriate, finds:

a. Beyond a reasonable doubt at least 1 statutory aggravating circumstance; and

b. Unanimously recommends, after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or

details of the commission of the offense and the character and propensities of the offender, that a sentence of death be imposed. Where the jury, or judge when applicable, submits such a finding and recommendation, the Court shall sentence the defendant to death as provided by subsection (f) of this section. A finding by the jury of a statutory aggravating circumstance, and a consequent recommendation of death, supported by the evidence, shall be binding on the Court.

(2) Refusal or failure of the Court to follow the jury's recommendation for any reason shall be appealable by the State as of right to the Supreme Court within 30 days after imposition of sentence.

(3) If the jury, or judge when applicable, cannot unanimously find that at least 1 statutory aggravating circumstance exists and cannot unanimously recommend death, the Court shall sentence the defendant to life imprisonment without benefit of probation or parole.

(e) *Aggravating circumstances.—*

(1) In order for a sentence of death to be imposed, the jury, unanimously, or judge when applicable, must find that the evidence established beyond a reasonable doubt the existence of at least 1 of the following aggravating circumstances which shall apply with equal force to accomplices convicted of such murder:

a. The murder was committed by a person in, or who has escaped from, the custody of a law-enforcement officer or place of confinement.

b. The murder was committed for the purpose of avoiding or preventing an arrest or for the purpose of effecting an escape from custody.

c. The murder was committed against any law-enforcement officer, corrections employee or fireman, while such victim was engaged in the performance of his official duties.

d. The murder was committed against a judicial officer, a former judicial officer, Attorney General, former Attorney General, Assistant or Deputy Attorney General or former Assistant or Deputy Attorney General, State Detective or former State Detective, Special Investigator or former Special Investigator, during, or because of, the exercise of his official duty.

e. The murder was committed against a person who was held or otherwise detained as a shield or hostage.

f. The murder was committed against a person who was held or detained by the defendant for ransom or reward.

g. The murder was committed against a person who was a witness to a crime and who was killed for the purpose of preventing his appearance or testimony in any grand jury, criminal or civil proceeding involving such crime.

h. The defendant paid or was paid by another person or had agreed to pay or be paid by another person or had conspired to pay or be paid by another person for the killing of the victim.

i. The defendant was previously convicted of another murder or manslaughter or of a felony involving the use of, or threat of, force or violence upon another person.

j. The murder was committed while the defendant was engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any degree of rape, arson, kidnapping, robbery, sodomy or burglary.

k. The defendant's course of conduct resulted in the deaths of 2 or more persons where the deaths are a probable consequence of the defendant's conduct.

l. The murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, use of an explosive device or poison or the defendant used such

means on the victim prior to murdering him.

m. The defendant caused or directed another to commit murder or committed murder as an agent or employee of another person.

n. The defendant was under a sentence of life imprisonment, whether for natural life or otherwise, at the time of the commission of the murder.

o. The murder was committed for pecuniary gain.

p. The victim was pregnant.

q. The victim was severely handicapped or severely disabled.

r. The victim was 62 years of age or older.

(2) In any case where the defendant has been convicted of murder in the first degree in violation of any provision of § 636(a)(2)–(7) of this title, that conviction shall establish the existence of a statutory aggravating circumstance and the jury, or judge where appropriate, shall be so instructed. This provision shall not preclude the jury, or judge where applicable, from considering and finding the statutory aggravating circumstances listed in this subsection and any other aggravating circumstances established by the evidence.

(f) *Method and imposition of sentence of death.*—The imposition of a sentence of death shall be upon such terms and conditions as the trial court may impose in its sentence, including the place, the number of witnesses and conditions of privacy. Punishment of death shall, in all cases, be inflicted by hanging by the neck and such sentence may not be carried out until final review thereof is had by the Delaware Supreme Court as provided for in subsection (g) of this section. The Court or the Governor may suspend the execution of the sentence until a later date to be specified, solely to permit completion of the process of judicial review of the conviction.

(g) *Automatic review of death penalty by Delaware Supreme Court.*—

(1) Whenever the death penalty is imposed, and upon the judgment becoming final in the trial court, the recommendation on and imposition of that penalty shall be reviewed on the record by the Delaware Supreme Court. Absent an appeal having been taken by the defendant upon the expiration of 30 days after the sentence of death has been imposed, the Clerk of the Superior Court shall require a complete transcript of the punishment hearing to be prepared promptly and within 10 days after receipt of that transcript he shall transmit the transcript, together with a notice prepared by him, to the Delaware Supreme Court. The notice shall set forth the title and docket number of the case, the name of the defendant, the name and address of any attorney and a narrative statement of the judgment, the offense and the punishment prescribed. The Court shall, if necessary, appoint counsel to respond to the State's positions in the review proceedings.

(2) The Supreme Court shall limit its review under this section to the recommendation on and imposition of the penalty of death and shall determine:

a. Whether, considering the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender, the death penalty was either arbitrarily or capriciously imposed or recommended, or disproportionate to the penalty recommended or imposed in similar cases arising under this section.

b. Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection (e) of this section and, where applicable, § 636(a)(2)–(7) of this title.

(3) The Supreme Court shall permit the defendant and the State to submit briefs within the time provided by the Court, and permit them to present oral argument to the Court.

(4) With regard to review of the sentence in accordance with this subsection, the Court shall:

a. Affirm the sentence of death.

b. In cases where the trial court erroneously rejected the jury's recommendation of the death sentence, remand with directions to reinstate the jury's recommendation and to impose the penalty of death.

c. Set aside the sentence of death and remand for correction of any errors occurring during the hearing and for imposition of the appropriate penalty. Such errors shall not affect the determination of guilt and shall not preclude the reimposition of death where appropriately determined after a new hearing on punishment.

d. Set forth its findings as to the reasons for its actions.

(h) *Ordinary review not affected by section.*—Any error in the guilt phase of the trial may be raised as provided by law and rules of court and shall be in addition to the review of punishment provided by this section.