**David J. LAWRIE, Defendant–Below, Appellant,**

v.

**STATE of Delaware, Plaintiff–Below, Appellee.**

Nos. 243, 282, 1993.

Supreme Court of Delaware.

Submitted: May 6, 1994.

Decided: July 8, 1994.

Rehearing Denied July 19, 1994.

Bernard J. O'Donnell, Public Defender's Office, Wilmington, for appellant.

Richard E. Fairbanks, Jr., Dept. of Justice, Wilmington, for appellee.

Before VEASEY, C.J., MOORE, WALSH, HOLLAND, and HARTNETT, JJ., constituting the Court en Banc.

VEASEY, Chief Justice:

In this case we review the sentences of death imposed on July 8, 1993, by the Superior Court on David J. Lawrie ("Lawrie") for the first degree felony murders of Fawn and Tabitha Lawrie, two of the three children of Lawrie and Lawrie's wife, Michelle Lawrie ("Michelle"), and a four-year-old neighborhood boy, Charles Humbertson.[1]

Lawrie deliberately set fire to the house where the victims and a survivor of the fire (Lisa Humbertson, another neighborhood child) were staying. He was charged with several counts of murder in the first degree: the intentional murder of Michelle, and the felony murders of Fawn, Tabitha, and Charles Humbertson. The felony murder counts were based on 11 *Del.C.* § 636(a)(2), which provides that a person is guilty of first

---

1. The Superior Court imposed a sentence of death for each count of first degree murder for which Lawrie was convicted.

degree murder if "[i]n the course of ... a felony ... he recklessly causes the death of another person." The jury convicted Lawrie of the first degree felony murders of his two daughters and Charles Humbertson. The jury acquitted Lawrie of the intentional first degree murder of Michelle, but convicted him of the second degree murder of Michelle.[2]

Lawrie asserts for the first time on this appeal two errors in the jury instructions: (1) failure to instruct the jury regarding the elements of criminally negligent felony murder because that crime, according to Lawrie, is a lesser included offense of reckless felony murder, and (2) failure properly to instruct the jury on the burden of proof with regard to the non-statutory aggravating circumstances and the mitigating circumstances. Since these issues were not raised at the trial level, we have considered them under the plain error standard of review.

After determining guilt, the jury considered the penalty phase. By a vote of 9 to 3, the jury determined that the aggravating circumstances found to exist outweighed the mitigating circumstances found to exist. Following his own assessment of the relevant circumstances, and with due regard for the jury's recommendation, the Superior Court concluded that it was more likely than not that the aggravating circumstances outweighed the mitigating circumstances. Based on this conclusion, the Superior Court sentenced Lawrie to death for the first degree felony murders of Tabitha Lawrie, Fawn Lawrie, and Charles Humbertson.

In its analysis, the Superior Court found that the following statutory aggravating circumstances had been proven beyond a reasonable doubt: (1) The murder was committed while the defendant was engaged in the commission of arson; (2) the murder was committed while the defendant was engaged in the commission of burglary; (3) the defendant's course of conduct resulted in the deaths of two or more persons where the deaths were a probable consequence of the defendant's conduct. 11 Del.C. § 4209(e)(1)j and k. The trial court also considered several non-statutory aggravating circumstances,

including Lawrie's conduct while in prison (he had two violent encounters with other inmates) and the impact of the deaths on the victims' families.

Finally, the Court considered the following mitigating circumstances: (1) There was no evidence that Lawrie intended to kill the children; (2) the jury concluded that Lawrie did not intend to kill Michelle; (3) Lawrie's execution would have "a substantially adverse impact" on his seven-year-old son Marcus and on Lawrie's mother; (4) Lawrie assisted Lisa Humbertson to escape, although he did this only after he was out of danger and did not put himself at risk to try to save the others; (5) Lawrie had no record of prior unrelated offenses, though he did violate a recent Family Court no-contact order; (6) Lawrie had performed kind acts toward his family and friends in the past; (7) Lawrie had been gainfully employed for most of his adult life; and (8) Lawrie accepted responsibility for his actions.

This case presents the following questions for our review: (1) whether the trial court should have instructed the jury regarding the elements of criminally negligent felony murder; (2) whether the trial court properly instructed the jury regarding aggravating and mitigating circumstances; and (3) whether, under our statutorily mandated review, (a) the evidence in the record supports the Superior Court's finding of a statutory aggravating circumstance, (b) the sentences were arbitrarily or capriciously imposed or recommended, and (c) the sentences were disproportionate to that recommended or imposed in similar cases arising under 11 Del.C. § 4209.

We hold that the trial court committed no error and we **AFFIRM** the convictions and the sentences of the trial court.

## I. FACTS

Prior to November 1991 Lawrie lived in Dover, Delaware, with Michelle, and their three young children: Marcus, Fawn, and

---

**2.** He was also found guilty of arson in the first degree and burglary in the second degree. He

received prison sentences for his second degree murder, arson, and burglary convictions.

Tabitha.[3] Relations between Lawrie and his wife were strained. Around Thanksgiving of 1991 Lawrie moved to Florida with his family, but returned to Dover in early January 1992. Michelle remained in Florida with Fawn and Tabitha until late January 1992, when they returned to Dover. Lawrie experienced numerous problems in 1992, including sporadic unemployment, use of crack cocaine, and separation from his wife.

In late July 1992 Lawrie and Michelle had a heated argument in which Lawrie threatened to kill his wife. Lawrie was arrested and charged with terroristic threatening and offensive touching. On August 5, 1992, Lawrie pleaded guilty to the terroristic threatening charge in Family Court. He was placed on probation and ordered to have no contact with his wife. As Lawrie was leaving Family Court, Michelle told him that she was filing for divorce. Lawrie testified that, on the night of August 5, he smoked crack cocaine[4] in order to relax, but that it instead increased his anger. He also brooded over statements from friends and family members that Michelle had been unfaithful to him.

On the morning of August 6, 1992, Lawrie went to the house where Michelle, Fawn, and Tabitha were staying. Two neighborhood children, Charles Humbertson (age 4) and Lisa Humbertson (age 8), were also in the house. Lawrie brought a two-gallon can of gasoline with him to the house and kicked in the back door. Lawrie also had a knife with him in the house.[5] After Lawrie broke into the house, he began pouring gasoline around the living room where Fawn and the Humbertson children were playing. The children fled to the bedroom where Michelle and Tabitha were located. Lawrie then ignited the gasoline with a lighter. Lawrie claimed at trial that he did not intend to kill anyone, but instead wanted to "scare the hell out of Michelle." As the living room rapidly became engulfed in flames, Lawrie went into the bedroom and stabbed Michelle several times with the knife. Lawrie claimed that the stabbing was accidental and reflexive.

Lawrie escaped from the bedroom (which was filled with smoke) by climbing over a chest of drawers and breaking a window. Lawrie then obtained a step ladder, placed it near the window, and helped Lisa Humbertson escape. Lawrie testified that he asked Michelle to hand him the other children, but did not receive any response. By this time, thick smoke was pouring out of the window. Michelle, Fawn, Tabitha, and Charles Humbertson died in the fire. Lawrie fled to the home of a neighbor, and told the neighbor what he had done. The neighbor called the police, and Lawrie waited at the neighbor's home until the police arrived. He was arrested, tried, convicted, and sentenced as outlined above.

## II. WHETHER THE TRIAL COURT SHOULD HAVE INSTRUCTED THE JURY REGARDING THE ELEMENTS OF CRIMINALLY NEGLIGENT FELONY MURDER

Lawrie argues on appeal that the trial court should have instructed the jury regarding the elements of criminally negligent felony murder, 11 *Del.C.* § 636(a)(6), which he claims is a lesser included offense of reckless felony murder, 11 *Del.C.* § 636(a)(2). Lawrie contends that, if he had been convicted of the former offense instead of the latter, he could not have been sentenced to death. We need not address this contention because we hold that the Superior Court was not required to instruct the jury regarding the elements of 11 *Del.C.* § 636(a)(6).

 Lawrie did not ask the trial court to give the instruction which he now claims was required. As a result, he must demonstrate that the trial court's failure to give the instruction constituted plain error. Supr.Ct.R. 8; *Liu v. State*, Del.Supr., 628 A.2d 1376,

---

3. At the time of their deaths in August 1992, Fawn was four years old and Tabitha was two years old.

4. Although Lawrie testified that he had smoked crack that evening, a blood test taken the following day did not indicate any trace of the drug in his system.

5. There is a factual dispute concerning where Lawrie obtained the knife. Lawrie testified that he picked up the knife off a workbench located in the garage of the house. Michelle's stepfather, who owned the house, denied ever seeing the knife before and testified that no such knife was kept in the garage.

1387 (1993). "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." *Wainwright v. State*, Del. Supr., 504 A.2d 1096, 1100 (1986), *cert. denied*, 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986).

■ It is not necessary for us to address the question of whether 11 *Del.C.* § 636(a)(6) is a lesser included offense of 11 *Del.C.* § 636(a)(2) because no instruction is required to be given under the facts of this case. Under 11 *Del.C.* § 206(c), "[a] court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." As this Court has explained, "it is not enough that a defendant could be convicted of a lesser charge if he had been indicted for it; rather, the evidence must support a jury verdict convicting the defendant of the lesser crime *rather than* the indicted crime." *Ward v. State*, Del.Supr., 575 A.2d 1156, 1159 (1990) (emphasis in original).

In order for Lawrie to be convicted of 11 *Del.C.* § 636(a)(6) instead of 11 *Del.C.* § 636(a)(2), a jury would have to conclude that his conduct constituted criminal negligence but not did not rise to the level of recklessness. We do not believe that a rational jury could reach that conclusion under the facts of this case. "A person acts recklessly with respect to an element of an offense when **he is aware of and consciously disregards a substantial and unjustifiable risk** that the element exists or will result from his conduct." 11 *Del.C.* § 231(c) (emphasis supplied). By contrast, "[a] person acts with criminal negligence with respect to an element of an offense when **he fails to perceive a risk** that the element exists or

will result from his conduct." 11 *Del.C.* § 231(d) (emphasis supplied). As explained in the 1973 commentary to the Delaware Criminal Code, "in the case of criminal negligence the actor is unaware of the risk his conduct is creating, whereas in the case of recklessness he is aware." *Id.* at 31.

There is no question that Lawrie was aware that his conduct was creating a substantial and unjustifiable risk to the lives of his wife, his daughters, and the Humbertson children, and that he consciously disregarded that risk. Lawrie admitted at trial that he doused the living room with gasoline and ignited it despite knowing that his wife and the children were still trapped inside. A person cannot intentionally set an occupied house on fire and yet be unaware that this act is creating a substantial risk to the lives of the occupants of the house.

Accordingly, we hold that there was no rational basis in the evidence for a verdict acquitting Lawrie of reckless felony murder under 11 *Del.C.* § 636(a)(2) and instead convicting him of criminally negligent felony murder under 11 *Del.C.* § 636(a)(6). We find that plain error has not been shown with regard to the trial court's failure to instruct the jury as to the elements of § 636(a)(6).

### III. THE JURY INSTRUCTIONS REGARDING AGGRAVATING AND MITIGATING CIRCUMSTANCES

■ At the end of the penalty hearing, the trial court instructed the jury that statutory aggravating circumstances had to be established beyond a reasonable doubt, but did not specify a burden of proof for non-statutory aggravating circumstances or for mitigating circumstances.[6] Lawrie raises two claims on appeal regarding the propriety of the trial court's instructions. First, Lawrie argues

---

6. Specifically, the Superior Court instructed the jury, in pertinent part, as follows:

The Delaware law specifies certain statutory aggravating circumstances, at least one of which must be found to exist beyond a reasonable doubt in order to make death an available punishment. The law also permits you to consider any other aggravating factors not defined to be statutory aggravating circumstances which may exist in a particular case. The law

does not specify mitigating circumstances, but the defense may offer evidence relating to any mitigating circumstances which it contends exists in a particular case.

It is within your province as individual jurors to determine the aggravating and mitigating circumstances which exist in this case and the weight that should individually be accorded.

that non-statutory aggravating circumstances, like statutory aggravating circumstances, must be proven beyond a reasonable doubt, and therefore the trial court erred by not instructing the jury as to the appropriate burden of proof. Second, Lawrie claims that the failure of the trial judge to instruct the jury as to the burden of proof for mitigating circumstances was plain error because the jury might believe that such circumstances had to be proven beyond a reasonable doubt. Lawrie did not raise either of these issues below, and therefore must demonstrate that the instructions given by the trial court constituted plain error. Supr.Ct.R. 8; *Liu v. State*, 628 A.2d at 1387.

The burden of proof for non-statutory aggravating circumstances was addressed by this Court in *Dawson v. State*, Del.Supr., 637 A.2d 57 (1994). In *Dawson*, this Court held that "the Delaware death penalty statute does not require the State to present evidence establishing a *non-statutory* aggravating circumstance beyond a reasonable doubt before it may be 'found to exist.'" *Id.* at 64 (emphasis in original). Lawrie nevertheless argues that *State v. Cohen*, Del.Supr., 604 A.2d 846 (1992) supports his position by referring to "the requirement, found in both the old and new laws, that each aggravating factor be proven beyond a reasonable doubt...." *Id.* at 851. As explained in *Dawson*, this statement in *Cohen*, when read in context, is clearly referring to statutory aggravating circumstances, not non-statutory aggravating circumstances. *Dawson*, 637 A.2d at 63–64. As a result, Lawrie's reliance on *Cohen* is misplaced. Therefore, consistent with our decision in *Dawson*, we hold that the Superior Court's instruction regarding non-statutory aggravating circumstances was not erroneous.

This Court's decision in *Dawson* is also dispositive of Lawrie's claim that the Superi-

or Court's instructions were deficient because they could have led the jury to believe that mitigating circumstances had to proven beyond a reasonable doubt. In *Dawson*, this Court held that the Superior Court's instructions regarding the process by which the jury should assess aggravating and mitigating circumstances under 11 *Del.C.* § 4209 were unambiguous. Thus, it was not necessary to determine, pursuant to the standard set forth in *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1197, 108 L.Ed.2d 316 (1990), whether the jury instructions violated the Eighth Amendment. *Dawson*, 637 A.2d at 65.

■ The pertinent jury instructions in this case are virtually identical to those found unambiguous in *Dawson*. *Compare* footnote 6, *supra*, *with* 637 A.2d at 65. As in *Dawson*, there is no basis in the record of this case to conclude that the jury may have believed that mitigating circumstances had to be proven beyond a reasonable doubt. The trial judge's instructions clearly stated that only statutory aggravating circumstances must be proven beyond a reasonable doubt. Thus, Lawrie has not demonstrated any error, much less plain error, in the trial court's instructions regarding the jury's consideration of mitigating circumstances.

## IV. THIS COURT'S STATUTORILY MANDATED REVIEW

As mandated by 11 *Del.C.* § 4209(g)(2),[7] this Court independently reviews the sentences of death imposed on Lawrie by the Superior Court to determine whether: (1) the evidence in the record supports the Superior Court's finding of a statutory aggravating circumstance, (2) the sentences were arbitrarily or capriciously imposed or recommended, and (3) the sentences were disproportionate to that recommended or imposed

---

7. Section 4209(g)(2) provides:

 (2) The Supreme Court shall limit its review under this section to the recommendation on and imposition of the penalty of death and shall determine:

 a. Whether, considering the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender, the death penalty

was either arbitrarily or capriciously imposed or recommended, or disproportionate to the penalty recommended or imposed in similar cases arising under this section.

 b. Whether the evidence supports the judge's finding of a statutory aggravating circumstance as enumerated in subsection (e) of this section and, where applicable, § 636(a)(2)–(7) of this title.

in similar cases arising under § 4209. In performing its mandatory statutory review, this Court has always been keenly aware that "death as a punishment is unique in its severity and irrevocability." *Sullivan v. State,* Del.Supr., 636 A.2d 931, 948–49 (1994); *Pennell v. State,* Del.Supr., 604 A.2d 1368, 1375 (1992); *Gregg v. Georgia,* 428 U.S. 153, 187, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976). *See also Furman v. Georgia,* 408 U.S. 238, 286–87, 306, 92 S.Ct. 2726, 2750–51, 2760, 33 L.Ed.2d 346 (1972) (concurrences of Justices Brennan and Stewart).

■ In undertaking its mandatory review, this Court follows the following procedure:

This Court has traditionally commenced its mandatory statutory review by initially addressing subparagraph (b) of Section 4209(g)(2). *Pennell v. State,* 604 A.2d at 1375. That subsection requires this Court to examine the evidence in the record to determine whether it supports the findings of the Superior Court judge which relate to the establishment of statutory aggravating circumstances. 11 *Del.C.* § 4209(e). Thereafter, two additional inquiries are required by subparagraph (a) of Section 4209(g)(2): first, whether the Superior Court judge's imposition of the death penalty was either arbitrary or capricious; and second, whether the death penalty imposed was disproportionate to the penalty imposed in similar cases arising under this statute. *Pennell v. State,* 604 A.2d at 1375; *Riley v. State,* Del.Supr., 496 A.2d 997, 1026 (1985) [*cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986) ]. "Each question requires a consideration of the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender." 11 *Del.C.* § 4209(g)(2); *Pennell v. State,* 604 A.2d at 1375.

*Red Dog v. State,* Del.Supr., 616 A.2d 298, 306–07 (1992).

### A. Statutory Aggravating Circumstances

■ After carefully reviewing the record, we find that the evidence clearly supports the Superior Court's conclusion that the following statutory aggravating circumstances have been proven beyond a reasonable doubt: (1) The murders were committed while the defendant was engaged in the commission of arson; (2) the murders were committed while the defendant was engaged in the commission of burglary; (3) the defendant's course of conduct resulted in the deaths of two or more persons where the deaths were a probable consequence of the defendant's conduct. 11 *Del.C.* § 4209(e)(1)j and k. The testimony of Lawrie, Robert Vassallo,[8] and Lisa Humbertson establish that Lawrie committed the crime of burglary in the second degree when he knowingly entered the house where Michelle, Fawn, and Tabitha were staying with the intent of committing a crime therein, and that Lawrie committed the crime of arson in the first degree while in the house by starting a fire with the intent of damaging the dwelling. *See* 11 *Del.C.* §§ 803, 825. Based on this testimony and other evidence, the jury convicted Lawrie of arson in the first degree and burglary in the second degree, as well as first degree felony murder under 11 *Del.C.* § 636(a)(2), thereby establishing as a matter of law the first two statutory aggravating circumstances. Since it is undisputed that four persons died in the fire started by Lawrie, each of the three statutory aggravating circumstances has been established beyond a reasonable doubt.

### B. Whether the Sentences were Arbitrary and Capricious

The basis for the Superior Court's decision to sentence Lawrie to death is carefully set forth in its detailed 12–page opinion, in which the Superior Court considered the totality of the evidence in aggravation and mitigation bearing upon the particular circumstances and details of the crime committed by Lawrie, as well as his character and propensities. After weighing these aggravating and miti-

8. Robert Vassallo testified at trial that he drove Lawrie to a gas station on the morning of August

6, 1992, and that Lawrie had a can of gasoline with him.

gating circumstances, the trial court concluded:

> The evidence supports the conclusion the defendant's reckless disregard for human life implicit in committing a burglary for the purpose of committing arson in the 1st degree while two of his own natural children as well as two neighbor children and his estranged spouse were present and placed in terror by his violent actions known to carry a grave risk of death represents a highly culpable mental state when, as here, that conduct causes its natural though not inevitable, lethal result. The highly culpable mental state, the statutory and non-statutory aggravating circumstances here found, independently confirmed by the jury's 9–3 recommendation, convince me it is more likely so than not so they outweigh the mitigating circumstances found above. I therefore, must impose a sentence of death as to each guilty finding of the felony murder of Tabitha Lawrie, Fawn Lawrie, and Charles Humbertson in accordance with the responsibility placed on me by 11 Del.C. § 4209(d).

■ The record reflects that the Superior Court's decision to impose the death sentences was the product of a deliberate, rational, and logical deductive process. *Red Dog,* 616 A.2d at 310. We therefore conclude that Lawrie's sentences of death were neither arbitrarily nor capriciously imposed by the Superior Court.

## C. Whether the Death Penalty Here is Disproportionate in Relation to Similar Cases

■ The remaining question that this Court must address in our automatic review is whether the imposition of the death penalty on Lawrie was disproportionate to the penalty imposed in "similar" cases arising under the Delaware death penalty statute. 11 *Del.C.* § 4209(g)(2)a provides that the Supreme Court shall determine:

> **Whether,** considering the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender, **the death penalty was** either arbitrarily or capriciously imposed or recommended, or **disproportionate to the penalty recommended or imposed in similar cases arising under this section.**

(Emphasis supplied.) In answering that inquiry, the clearly established procedure of this Court has been to review carefully the "universe" of cases established in *Flamer, Bailey, Riley, Deputy, DeShields, Dawson, Pennell, Red Dog, Wright, Gattis, Sullivan,* and *Ferguson,* as well as all subsequent cases falling therein.[9] The "universe" of cases is comprised of those first degree murder cases which have included a penalty hearing and in which the sentence has become final, either without or following a review by this Court. *See Red Dog,* 616 A.2d at 311. As this Court has pointed out in prior cases involving the proportionality review, "[a] definitive comparison of the 'universe' of cases is almost impossible." *Id.* (citing *Pennell,* 604 A.2d at 1376; *Riley v. State,* Del.Supr., 496 A.2d 997, 1027 (1985), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Flamer v. State,* Del.Supr., 490 A.2d 104, 144 (1984), *cert. denied,* 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983), and *cert. denied,* 474

---

9. The Appendix to this Opinion contains a comprehensive and updated list of cases constituting the "universe" of cases considered in our proportionality review. The Appendix therefore incorporates and supersedes the appendices previously set forth by this Court. *See Ferguson v. State,* Del.Supr., 642 A.2d 772 (1994); *Gattis v. State,* Del.Supr., 637 A.2d 808 (1994); *Sullivan v. State,* Del.Supr., 636 A.2d 931 (1994); *Wright v. State,* Del.Supr., 633 A.2d 329 (1993); *Red Dog v. State,* Del.Supr., 616 A.2d 298 (1992); *Pennell v. State,* Del.Supr., 604 A.2d 1368 (1992); *Dawson v. State,* Del.Supr., 581 A.2d 1078 (1990), *vacated on other grounds,* —— U.S. ——, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992); *DeShields v. State,* Del.

Supr., 534 A.2d 630 (1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988); *Deputy v. State,* Del.Supr., 500 A.2d 581 (1985), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1589, 94 L.Ed.2d 778 (1987); *Riley v. State,* Del.Supr., 496 A.2d 997 (1985), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); *Bailey v. State,* Del.Supr., 490 A.2d 158 (1983), *cert. denied,* 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983), and *cert. denied,* 474 U.S. 873, 106 S.Ct. 195, 88 L.Ed.2d 164 (1985); *Flamer v. State,* Del.Supr., 490 A.2d 104 (1984), *cert. denied,* 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983), and *cert. denied,* 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985).

U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985); *see also DeShields v. State*, Del. Supr., 534 A.2d 630, 649 (1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988)). Nevertheless, we have compared Lawrie's sentences with the penalties imposed in all first degree murder cases which have included a death penalty hearing. Moreover, we have considered objective factors such as the gravity of the offense, the circumstances of the crime, the harshness of the penalty, and the statutory scheme in effect at the time. *See Red Dog*, 616 A.2d at 311. Such cases include capital cases where the Superior Court has not imposed the death penalty. *See, e.g., State v. Rodriguez*, Del.Super., ID. No. 93001668, Barron, J. (Nov. 29, 1993).

The examination of the "universe" of cases does not settle the issue presented by the statute requiring that this Court "shall determine ... whether ... the death penalty was ... disproportionate to the penalty recommended or imposed in **similar cases arising under this section.**" 11 *Del.C.* § 4209(g)(2) (emphasis supplied). The term "this section" refers to section 4209 of Title 11.

The background of Delaware's death penalty statute is instructive for purposes of the proportionality analysis. *See Flamer*, 490 A.2d at 121–22 n. 1. Except for a brief period when the death penalty statute was repealed or held unconstitutional, Delaware law has long included execution as a penalty for specified crimes. The 1915 codification of Delaware law imposed a mandatory death sentence on individuals found guilty of committing murder with express malice aforethought or of committing murder while perpetrating or attempting to perpetrate any crime punishable by death, including treason, rape, or kidnapping. Revised Code of Delaware ¶ 4697 (1915). Later code revisions retained these death penalty provisions. *See* Revised Code of Delaware ch. 149, ¶ 5157, § 1 (1935); 11 *Del.C.* § 571 (1953). In 1958 the General Assembly amended the code to abolish execution as a criminal penalty in Delaware. 51 Del.Laws ch. 347 (1958). In 1961, in apparent response to the murder of an elderly couple, the General Assembly restored execution as the mandatory penalty

for first degree murder. *Flamer*, 490 A.2d at 121 n. 1.

In *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 the United States Supreme Court rendered a decision effectively invalidating those state capital punishment statutes which had provided sentencing juries with no clear, objective guidelines and virtually unlimited discretion in imposing a death sentence. In apparent response, the General Assembly in 1972 amended the First Degree Murder statute to provide for an alternative sentence of life imprisonment or life imprisonment without parole. 58 Del. Laws ch. 497 § 4209 (1971) (approved July 6, 1972). In 1974 the General Assembly again amended the First Degree Murder statute making the death sentence mandatory unless the death penalty were found to be unconstitutional, in which case the penalty would be life imprisonment without parole. 59 Del. Laws ch. 284 (1974). This Court upheld the constitutionality of the mandatory death sentence statute in *State v. Sheppard*, Del.Supr., 331 A.2d 142 (1974).

In 1976 the United States Supreme Court issued a number of decisions which declared unconstitutional mandatory death penalty statutes such as the Delaware statute, while upholding the constitutionality of death penalty laws which limited the discretion of the sentencing jury. *See, e.g., Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909. In response to these decisions, this Court declared Delaware's 1974 mandatory death sentence statute unconstitutional in *State v. Spence*, Del. Supr., 367 A.2d 983 (1976).

The statutes which the United States Supreme Court held constitutional in 1976 included three common aspects: (1) a bifurcated trial; (2) a requirement that juries find the existence of specific aggravating circumstances and consider mitigating circumstances before imposing a death sentence; and (3) expedited appellate review of all jury impositions of death sentences. *Flamer*, 490 A.2d at 121. Immediately following this Court's decision in *Spence*, the General Assembly enacted on May 14, 1977, a new death penalty statute, 11 *Del.C.* § 4209. That statute was similar to the current statute, but required a unanimous jury verdict to impose

the death penalty. The General Assembly modeled § 4209 after the Georgia statute which the United States Supreme Court sanctioned in *Gregg,* and thereby incorporated the three aspects delineated above into Delaware's death penalty procedure.

An amendment to 11 *Del.C.* § 4209, which took effect on November 4, 1991, changed significantly the statutory scheme. *See* 68 Del.Laws ch. 189 (1991). Prior to the 1991 amendment, before the death penalty could be imposed, the jury had to agree unanimously that a defendant should be sentenced to death. As a result, a life sentence without parole would be imposed even if the jury had voted 11 to 1 in favor of a death sentence and the trial judge believed that such a sentence was appropriate. As this Court observed in discussing a pre-amendment penalty hearing, "the inability of the jury to reach a unanimous verdict [to impose a death sentence] ... cannot be equated with a 'recommendation' of a life sentence by the jury." *Pennell,* 604 A.2d at 1377.

■ Under the revised procedure set forth in the post–1991 version of section 4209 of Title 11, a unanimous jury verdict is no longer a requirement for the imposition of the death penalty. Instead, the jury makes its recommendation by majority vote and the trial judge is vested with ultimate sentencing authority. The jury's function is purely advisory. The trial judge may completely reject the recommendation of the jury. *See, e.g., Baker v. State,* Del.Supr., No. 360, 1992, order at 2, Lee, J., 1993 WL 258920 (Dec. 30, 1993) (ORDER) (jury recommended death sentence but trial judge sentenced the defendant to life imprisonment); *Dickerson v. State,* Del.Supr., No. 353, 1992, order at 10, Veasey, C.J., 1993 WL 541913 (Dec. 21, 1993) (ORDER) (same); *see also Pennell,* 604 A.2d at 1377 (discussing the Florida death penalty statute which allows a trial judge to impose a death sentence after a jury recommendation of life where the facts suggesting a death sentence are so clear and convincing that virtually no reasonable person could differ). This Court upheld the constitutionality of this procedure in *State v. Cohen,* 604 A.2d 846. It is apparent, therefore, that many pre–1991 penalty hearings in which a life

sentence was imposed could have resulted in a death sentence under the revised procedure.

■ A death sentence is not necessarily "disproportionate" to similar cases arising under § 4209 simply because it is inconsistent with the sentence imposed in cases which had some similar factual characteristics. In order for a death sentence to be disproportionate, the circumstances of the crime, the character of the defendant, and the statutory scheme must be so similar to those of other cases where a life sentence without parole was imposed that it would be fundamentally unfair to sustain the death sentence.

In this case, the Superior Court, in its thoughtful opinion, acting on the jury's 9–3 conclusion that the aggravating circumstances outweighed the mitigating circumstances, stated:

Having reached the required conclusion under 11 *Del.C.* § 4209(d)a. as a threshold requirement before further inquiry I must make comment on another important conclusion equally inescapable from the jury result. The jury concluded David Lawrie did not intend to kill anyone. The State did not accuse David Lawrie of intending to kill Tabitha Lawrie, Fawn Lawrie, or Charles Humbertson. The State did allege David Lawrie intended to kill Michelle Lawrie. The jury rejected that contention by finding him guilty of the lesser included offense of Murder in the Second Degree— a charge whose *mens rea* does not include intent to kill. The State never alleged David Lawrie intended to kill the children, but rather· he acted recklessly—thereby causing their deaths. Nonetheless, the State seeks imposition of the death penalty.

There can be no question the General Assembly believes imposition of the death penalty may be appropriate for reckless conduct. In fact, 11 *Del.C.* § 636(a)(6) provides for a *mens rea* of criminal negligence for conviction of Murder in the First Degree when one causes the death of another person in the course of and in the furtherance of the commission of arson in the first degree. **Given the clear message from**

the General Assembly that even conduct rising only to the level of criminal negligence, much less intentional conduct, may subject one to the possibility of the death penalty, any Court's view as to how any reasonably civilized society could conceivably put anyone to death for less than an intent to kill another person is immaterial. Our statutory scheme is the statement of current social policy I must and will follow.

(Emphasis supplied.) The Superior Court thus observed the statutory mandate and recognized that "[t]he jury concluded that David Lawrie did not intend to kill anyone," and that "[t]he State did not accuse David Lawrie of intending to kill Tabitha Lawrie, Fawn Lawrie, or Charles Humbertson." Nevertheless, based on the nature of the first degree murder statute, the Superior Court sentenced Lawrie to capital punishment for these murders.

### 1. Constitutional Analysis

The logic of imposing the death sentence on a person who did not intend to kill has been questioned. The United States Supreme Court has observed that the two principal purposes of capital punishment—deterrence and retribution—are not served by executing a defendant who neither participated in the killing nor intended to kill. *Enmund v. Florida*, 458 U.S. 782, 798–800, 102 S.Ct. 3368, 3377–78, 73 L.Ed.2d 1140 (1982); *see also Gregg v. Georgia*, 428 U.S. at 183, 96 S.Ct. at 2929–30 ("The death penalty is said to serve two principal social purposes: retribution and deterrence of capital crimes by prospective offenders."). As for retribution, the *Enmund* Court explained that "this very much depends on the degree of Enmund's culpability—what Enmund's intentions, expectations, and actions were." 458 U.S. at 800, 102 S.Ct. at 3378. The Court concluded that Enmund's "personal responsibility and moral guilt" should be confined to the robbery because he neither committed the murders nor intended to commit them. *Id.* at 801, 102 S.Ct. at 3378.

■■■ It is now settled that the death penalty may be constitutionally imposed even in the absence of an intent to kill as long as the defendant played a major role in the felony and acted with a reckless disregard for human life. In *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), the United States Supreme Court held that "the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result." *Id.* at 157–58, 107 S.Ct. at 1688. In its analysis, the *Tison* court observed that:

[A] number of state courts have interpreted *Enmund* to permit the imposition of the death penalty in such aggravated felony murders. We do not approve or disapprove the judgments as to proportionality reached on the particular facts of these cases, but we note the apparent consensus that substantial participation in a violent felony under circumstances likely to result in the loss of innocent human life may justify the death penalty even absent an "intent to kill."

*Id.* at 154, 107 S.Ct. at 1686. Significantly, one of the cases cited by the *Tison* court was this Court's decision in *Deputy v. State*, Del. Supr., 500 A.2d 581 (1985), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1589, 94 L.Ed.2d 778 (1987).[10] The *Tison* court then explained:

A narrow focus on the question of whether or not a given defendant "intended to kill," however, is a highly unsatisfactory means of definitively distinguishing the most culpable and dangerous of murderers. Many who intend to, and do, kill are not criminally liable at all—those who act in self-defense or with other justification or excuse. Other intentional homicides, though criminal, are often felt undeserving of the death penalty—those that are the result of provocation. On the other hand, some nonintentional murderers may be among the most dangerous and inhumane of all—the person who tortures another not caring whether the victim lives

10. Andre S. Deputy was executed by lethal injec- tion shortly after 12:01 a.m. on June 23, 1994.

or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property. **This reckless indifference to the value of human life may be every bit as shocking to the moral sense as an "intent to kill."**

. . . .

Only a small minority of those jurisdictions imposing capital punishment for felony murder have rejected the possibility of a capital sentence absent an intent to kill, and we do not find this minority position constitutionally required. We will not attempt to precisely delineate the particular types of conduct and states of mind warranting imposition of the death penalty here. Rather, we simply hold that **major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement.**

*Id.* at 157–58, 107 S.Ct. at 1687–88 (emphasis supplied; citations omitted).[11] The conduct of Lawrie in this case meets that test and satisfies the *Tison* constitutional analysis.

This Court in *Whalen v. State,* Del.Supr., 492 A.2d 552 (1985) held that *Enmund* does not preclude a death sentence where a defendant acted recklessly instead of intentionally. *Id.* at 563–66. The Court distinguished *Enmund* based on the defendant's participation in the crime and the evidence of Whalen's intentions, expectations, and actions, as shown by his "rape of a very frail old woman while simultaneously strangling her." *Id.* at 564. Accordingly, it is clear that an intent to kill is not required as a constitutional minimum for the imposition of the death penalty.[12]

The standards set forth in *Enmund* and *Tison* were recently applied by the Superior Court in *State v. Rodriguez,* where Judge

Barron declined to impose the death penalty. The defendant in *Rodriguez* and two other men were seen escaping from a liquor store they had just robbed, but there was insufficient evidence to establish who had shot the victim in the store or whether the defendant intended or anticipated that a killing would occur during the robbery. The jury concluded by a 9–3 vote that the aggravating circumstances outweighed the mitigating circumstances. In its opinion, the court framed the issue as follows:

This case raises an issue of first impression in Delaware: Whether a defendant who was convicted of felony murder under 11 *Del.C.* § 636(a)6 may be sentenced to death when circumstantial evidence placed him at the scene of the murder with a gun in his hand, but no evidence existed which demonstrated beyond a reasonable doubt that he fired the fatal shots or expected that violence would erupt in the course of an attempted robbery during which a death occurred.

*Rodriguez,* slip op. at 2. The court analyzed the relevant Supreme Court decisions and other authorities on the constitutional issues, and concluded that the death penalty could not be constitutionally imposed under the circumstances of that case, which circumstances differ from those presented here. The court found that Rodriguez was a "major participant in the attempted robbery/murder," but there was no evidence that Rodriguez fired the shots or that he anticipated a killing. Slip op. at 43–45. The court concluded that "the evidence falls short of demonstrating beyond a reasonable doubt a reckless indifference to human life on the part of Jose Rodriguez. It follows that a death sentence may not constitutionally be imposed in this case." Slip op. at 45.

Here, however, there is a clear and supportable finding that Lawrie acted reck-

---

**11.** *Tison* involved two brothers who helped their father, a convicted murderer, escape from prison by smuggling guns into jail. They later assisted their father in abducting and robbing a family. Although they claimed to have been surprised when their father murdered the family, neither brother "made an effort to help the victims." 481 U.S. at 141, 107 S.Ct. at 1679. The Court, nevertheless, vacated the sentences of death and

remanded the case for a determination of whether the brothers acted with a reckless indifference to human life. *Id.* at 158, 107 S.Ct. at 1688.

**12.** We hold this to be correct as to both the United States Constitution (amend. VIII) and the Delaware Constitution (art. I, § 11).

lessly. Consequently, we refer to the *Rodriguez* case only for the purpose of fitting the outcome of that case into the universe of cases to be considered in the statutory proportionality analysis. While we express no opinion on the Superior Court's constitutional analysis in the *Rodriguez* case, which is not before us, we have concluded in the instant case, on significantly different facts, that there is no constitutional obstacle to the imposition of the death penalty either under the Delaware Constitution or under the United States Constitution.

### 2. Proportionality Analysis

The fact that the death penalty imposed in this case is not unconstitutional does not resolve our statutorily mandated review. We now turn to the statutory analysis relating to proportionality—was the imposition of the death penalty in this case "disproportionate to the penalty recommended or imposed in similar cases arising under this section [4209]"?

Most of the persons who have been sentenced to death in Delaware have committed "an unprovoked, cold-blooded murder of a helpless person (or persons) . . . [who lacked] the ability to defend themselves and solely for purposes of pecuniary gain." *Riley v. State*, 496 A.2d at 1027; *see also Wright v. State*, Del.Supr., 633 A.2d 329, 343 (1993). While pecuniary gain is a common feature, the death penalty has been upheld where that motive was not present. *E.g., Gattis v. State*, Del.Supr., 637 A.2d 808, 823 (1994) (involving a deliberate, cold-blooded killing of an ex-girlfriend); *Pennell*, 604 A.2d at 1377–78 (involving motiveless, deliberate murders preceded by torture). With few exceptions, deliberation has preceded the murder.

The *Whalen* case represents an instance where a death sentence was imposed in the absence of deliberation or murderous intent. Yet, the circumstances of that case were heinous. Whalen broke into the house of a 92–year–old neighbor and brutally attacked, raped and strangled her. While he may not have intended to kill the victim, Whalen clearly intended to harm her. Under such circumstances, the imposition of the death sentence was justifiable in light of the magnitude of Whalen's culpability.[13]

■■■ An analysis of Lawrie's "intentions, expectations, and actions" is appropriate to determine whether Lawrie's level of culpability is sufficient to justify the death penalty under the proportionality analysis. The circumstances of this case are heinous, although they are different from those in *Whalen*. It is clear that Lawrie acted recklessly, setting a fire under circumstances where death or great bodily harm to innocent victims was a likely consequence, and he disregarded those consequences. This was a horrible and gruesome crime. Yet, there is no evidence that Lawrie had any intention of hurting any of the children whose deaths were the basis of his first degree murder convictions. Moreover, Lawrie never assaulted or even physically touched the children. In fact, Lawrie made some effort to rescue the children, but was successful only in the case of Lisa Humbertson.

Finally, while Lawrie's actions involved breaking into the house and starting the fire, there was no evidence that Lawrie had behaved violently toward the children. He did not try to bar their escape or otherwise make it more probable than not that they would be hurt. Lawrie was not charged with an intentional killing of the children and was acquitted of intentionally killing Michelle. The issue which is clearly presented here is whether Lawrie's intentions, expectations, and actions reflect such a high level of culpability that the imposition of the death penalty here "was . . . disproportionate to the penalty recommended or imposed in similar cases under this section." 11 *Del.C.* § 4209(g).

Our independent research has revealed three Delaware cases which went to a death penalty hearing involving fact patterns which, like this case, involved arson resulting in death. In each case, the defendant was sentenced to life imprisonment without parole instead of death, but in these cases

---

**13.** Although Whalen's death sentence was vacated by this Court, 492 A.2d at 569, the basis for the reversal was the existence of procedural errors during his penalty hearing, and not the propriety of the sentence in light of Whalen's conduct.

Delaware's statutory scheme was different from that which is in effect today. In those cases the death penalty could be imposed **only** where there was a **unanimous** jury verdict in the penalty phase to impose the death penalty. As we noted in *Wright,* the 1991 revisions to the Delaware death penalty statute removed the decisionmaking authority from the jury and placed it in the hands of the sentencing judge. 633 A.2d at 342 n. 21. Although the significant 1991 changes in the statutory scheme create a significant dissimilarity between the pre–1991 cases and the post–1991 cases in the universe, pre–1991 jury decisions are nevertheless "pertinent" to our proportionality analysis.

In *Chao v. State,* Del.Supr., 604 A.2d 1351 (1992), the defendant was convicted of first degree murder for the deaths of three persons in a fire deliberately set by an accomplice in the home of an ex-lover. In *Chao,* "the fires had been specifically set so as to deny the occupants of the house a route of escape." 604 A.2d at 1353.[14] The defendant was sentenced to seven consecutive terms of life imprisonment. *Id.* at 1353. In *Liu v. State,* Del.Supr., 628 A.2d 1376 (1993), Chao's accomplice in setting the fire described above was similarly convicted of first degree murder and sentenced to life imprisonment. In *Fleming v. State,* Del.Supr., No. 193, 1991, Walsh, J., 1992 WL 135159 (Mar. 11, 1992) (ORDER), the defendant was sentenced to life imprisonment after being found guilty of first degree murder for killing an elderly man who died in a fire deliberately set by the defendant to get revenge against his ex-girlfriend and her new boyfriend. Slip op. at 1–2.[15]

The *Chao, Liu,* and *Fleming* cases, while "pertinent," are clearly distinguishable from the instant case because they were decided under the significantly dissimilar statutory scheme which required a unanimous jury verdict to impose the death penalty. As a result, it cannot be held that the death sentences imposed by the trial judge in this case

are necessarily "disproportionate" to the penalties imposed in *Chao, Liu,* and *Fleming.* Those cases are not "similar cases arising under this section." Thus, while pertinent, they are not dispositive or significantly persuasive on the proportionality issue when cases in the universe such as *Whalen* and those decided under the current statutory scheme are weighed in the balance.

All first degree murders are tragic and reprehensible. In this case, the deaths of three innocent children are clearly tragic, and Lawrie's reckless conduct, being the cause of those deaths, is reprehensible. Nevertheless, the statutory proportionality analysis inherently contemplates a distinction between first degree murderers who should be sentenced to death and those who should be sentenced to life imprisonment. As this Court has observed:

> All murderers merit harsh punishment, but death may not be made a mandatory punishment. Rather, because culpability varies among defendants, the harshest punishment must be reserved for the most blameworthy.

*Sanders v. State,* Del.Supr., 585 A.2d 117, 141 (1990) (citations omitted).

■ The unnecessary deaths of the innocent victims were unjustifiably caused by Lawrie's reckless and reprehensible conduct. In direct violation of the Family Court order prohibiting him from having any contact with his wife, Lawrie broke into the house where his wife and the other victims were staying with the intent of setting it on fire. Once inside, Lawrie poured gasoline around the living room and deliberately ignited it, despite knowing of the presence of young, helpless, and frightened children. Lawrie demonstrated no regard for the safety of the children while he was committing arson. Thus, Lawrie intentionally set in motion lethal forces (i.e., arson) which had the likely consequence of causing death to innocent

14. There is no evidence that Lawrie tried to prevent the children from escaping, and evidently tried to help them escape. Also, Lawrie acted shortly after several emotionally difficult events (i.e., the arrest, the possible divorce, the stories of his wife's alleged infidelities).

15. In the *Liu* and *Fleming* cases, the jury could not reach a unanimous verdict on whether a death sentence or life imprisonment without parole should be imposed. In *Chao,* the jury agreed that the defendant should be sentenced to life imprisonment without parole.

victims, and he did so without concern for those consequences. As a result, those four victims are dead. This was a horrible, gruesome, multiple felony murder. In our view, it was of comparable culpability, for proportionality review purposes, to other death penalty cases in the universe where there were intentional killings. *See Tison,* 481 U.S. at 158, 107 S.Ct. at 1688 ("[R]eckless indifference to the value of human life may be every bit as shocking to the moral sense as an 'intent to kill'"). To rule otherwise would establish a precedent that only intentional murders are subject to the death penalty despite the egregious circumstances (as here) of recklessly-caused felony murder.[16] Such a precedent would clearly be contrary to the law passed by the General Assembly.

Lawrie does not challenge the constitutionality of the proportionality review and does not cite pertinent authorities, such as Steven M. Sprenger, *A Critical Evaluation of State Supreme Court Proportionality Review in Death Sentence Cases,* 73 Iowa L.Rev. 719 (1988). Moreover, Lawrie does not cite *Harris v. Blodgett,* 853 F.Supp. 1239 (W.D.Wash. 1994), where the federal district court sitting in the State of Washington held in a habeas corpus proceeding that the Washington Supreme Court performed an inadequate proportionality review, thereby violating the due process rights of the petitioner. The *Harris* court further held that the Washington statute did not establish adequate standards or guidelines on which the Court or the parties could rely.

We have considered the *Harris* case *sua sponte* and have concluded that it is not controlling here because of (a) differences in the statutory language, (b) the clear and adequate standards for proportionality review which are established in the Delaware statute and by this Court in the implementation of the statute, and (c) the adequacy of the proportionality review performed by the Court in this case.

## V. CONCLUSION

This Court has determined that the facts supporting the sentences of death imposed upon Lawrie by the Superior Court for the murders of Fawn Lawrie, Tabitha Lawrie, and Charles Humbertson "are so clear and convincing that virtually no reasonable person could differ." *Red Dog,* 616 A.2d at 312 (quoting *Pennell,* 604 A.2d at 1378). The evidence clearly supports the Superior Court's finding that three statutory aggravating circumstances were established beyond a reasonable doubt. *See* 11 *Del.C.* § 4209(e), (g)(2)b.

This Court has carefully reviewed the entire record and has considered and rejected all claims of error raised by Lawrie in this appeal. We also have concluded that the death sentences imposed upon Lawrie were not imposed arbitrarily or capriciously, and they are not disproportionate to the sentences imposed in similar cases arising under 11 *Del.C.* § 4209. Accordingly, the judgment of the Superior Court sentencing Lawrie to death for the murders of Fawn Lawrie, Tabitha Lawrie, and Charles Humbertson, is **AFFIRMED.**

The parties shall have until 12 noon on July 15, 1994, to file motions for reargument or rehearing.[17] This matter is remanded to Superior Court for further proceedings in accordance with this opinion. This Court's order of July 13, 1993, staying the execution of Lawrie's death sentences shall terminate upon the issuance of this Court's mandate. The Clerk of this Court is directed to cause a copy of this opinion to be hand-delivered forthwith to the attorneys for the parties and to the Commissioner of the Department of Correction.

---

**16.** Under Delaware law, "[a] person acts recklessly with respect to an element of an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from his conduct. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." 11 *Del.C.* § 231(c).

**17.** The time for reargument has been abbreviated because the term of Justice Andrew G.T. Moore, II, will expire, pursuant to Del.Const. art. IV, § 3, 60 days following May 24, 1994, or on such earlier date as his successor is confirmed and takes the oath of office. *See* Supr.Ct.R. 4, 18. *Accord, Pennell,* 604 A.2d at 1378 n. 8.

## APPENDIX

### FIRST DEGREE MURDER CASES THAT WENT TO PENALTY HEARINGS

The following list of cases is a complete restatement of all first degree murder cases that have gone to a penalty hearing from 1985 * to date. It incorporates and supersedes the appendices in our decisions in *Ferguson v. State*, Del.Supr., 642 A.2d 772 (June 7, 1994); *Gattis v. State*, Del.Supr. 637 A.2d 808 (1994); *Dawson v. State*, Del.Supr., 637 A.2d 57 (1994); *Sullivan v. State*, Del.Supr., 636 A.2d 931 (1994); *Wright v. State*, Del. Supr., 633 A.2d 329 (1993); *Red Dog v. State*, Del.Supr., 616 A.2d 298 (1992); *Pennell v. State*, Del.Supr., 604 A.2d 1368 (1992); *Dawson v. State*, Del.Supr., 581 A.2d 1078 (1990). Cases in which an appeal is pending are designated with a diamond (◆)

### CASES DECIDED UNDER 11 *DEL.C.* § 4209

### PRIOR TO 1991 AMENDMENT

| | |
|---|---|
| Case Name: | William P. Baynard |
| Case No.: | S84–050137, 0141 |
| County: | New Castle |
| Sentence: | Life Imprisonment |

| | |
|---|---|
| Case Name: | Ransford Bryan |
| Case No.: | S87–11–0063 |
| County: | Sussex |
| Sentence: | Life Imprisonment |

| | |
|---|---|
| Case Name: | Vicky Chao |
| Case No.: | IN88–031025–1025 & 1027, 1028 |
| | IN88–0832–0836 |
| County: | New Castle |
| Sentence: | Life Imprisonment |

| | |
|---|---|
| Case Name: | Carmelo J. Claudio |
| Case No.: | IN87–030067–68 |
| County: | New Castle |
| Sentence: | Life Imprisonment |

| | |
|---|---|
| Case Name: | Lawrence R. Collingwood, Jr. |
| Case No.: | K87–09–0895 thru 0901 |
| County: | Kent |
| Sentence: | Life Imprisonment |

| | |
|---|---|
| Case Name: | Kenneth W. DeShields |
| Case No.: | IS84–080075–1075, –1275, –2075 |
| County: | Sussex |
| Sentence: | Death |

| | |
|---|---|
| Case Name: | Sebron Ernest Fleming, III |
| Case No.: | IN90–09–1047 |
| County: | New Castle |
| Sentence: | Life Imprisonment |

| | |
|---|---|
| Case Name: | Edward A. Fountain, Jr. |
| Case No.: | IN84–120293 thru 0297 |
| | IN84–121795 thru 1797 |

---

* First degree murder cases that went to a penalty hearing prior to 1985 are discussed in *Flamer v. State*, Del.Supr., 490 A.2d 104, 140–43, 157–58 (1984), which is incorporated herein by reference.

County: New Castle
Sentence: Life Imprisonment

Case Name: Randolph Graham
Case No.: IK86–010059
County: Kent
Sentence: Life Imprisonment

Case Name: James E. Harris, Jr.
Case No.: IN90–08–0497; 0498
County: New Castle
Sentence: Life Imprisonment

Case Name: Charles K. Kelly
Case No.: IN85–10–1671, 1672, 1673
County: New Castle
Sentence: Life Imprisonment

Case Name: Tze Poong Liu
Case No.: IN88–03–1013 thru 1015
 IN88–04–0838 thru 0840
County: New Castle
Sentence: Life Imprisonment

Case Name: James Edward Llewellyn
Case No.: IN91–01–1135, 1137, 1140 and 1142
 IN91–01–1136, 1138, 1141, 1143, 1146
 IN91–01–1139 and 1144
 IN91–01–1145
County: New Castle
Sentence: Life Imprisonment

Case Name: Christopher Delamore Long, Jr.
Case No.: IN91–01–1109 thru 1121
County: New Castle
Sentence: Life Imprisonment

Case Name: Joyce L. Lynch
Case No.: IK88–010040
County: Kent
Sentence: Life Imprisonment

Case Name: Stanley Newell
Case No.: IN89–006109
County: New Castle
Sentence: Life Imprisonment

Case Name: Ernest Charles Parson, Jr.
Case No.: IN86–120380, 86–1136–1137
 IN86–1144, 1147, 0381–0383, 1135
County: New Castle
Sentence: Life Imprisonment

Case Name: Steven B. Pennell
Case No.: IN88–120051–0053
County: New Castle
Sentence: Life Imprisonment

Case Name: Vincent Perry
Case No.: IN85–101668–1673
County: New Castle

Sentence: Life Imprisonment

Case Name: Maurice Polk
Case No.: S87–12–0093
County: Sussex
Sentence: Life Imprisonment

Case Name: Paul Arnold Robertson, Jr.
Case No.: IN91–01–1148 thru 1160
County: New Castle
Sentence: Life Imprisonment

Case Name: Kenneth Louis Rodgers
Case No.: IN91–01–1122 thru 1134
County: New Castle
Sentence: Life Imprisonment

Case Name: Frederick James Roop
Case No.: IN84–101691, 1692
County: New Castle
Sentence: Life Imprisonment

Case Name: Reginald N. Sanders
Case No.: IK86–03–0898, 0899, and 0903
County: Kent
Sentence: Life Imprisonment

Case Name: Christie C. Shipley
Case No.: IK85–020820 and 0821
County: Kent
Sentence: Life Imprisonment

Case Name: Melvin Smart
Case No.: S84–08–0037 and S84–08–0038
County: Sussex
Sentence: Life Imprisonment

Case Name: Desi Sykes
Case No.: IK88–11005
County: Kent
Sentence: Life Imprisonment

Case Name: Richard C. Thompson
Case No.: IK86–010059
County: Kent
Sentence: Life Imprisonment

Case Name: Frank C. Whalen, Jr.
Case No.: IK77–0–0035, 0036; IK76–030029
County: New Castle (venue changed)
Sentence: Life Imprisonment

Case Name: Lonnie Williams
Case No.: IN89–08–0638 thru 0645
 IN89–09–0938 thru 0943
County: New Castle
Sentence: Life Imprisonment

CASES DECIDED UNDER 11 *DEL.C.* § 4209
AS AMENDED IN 1991 BY 68 DEL.LAWS CH. 189

Case Name: Meri–Ya C. Baker
Case No.: IN90–12–1039, 1040
County: New Castle
Sentence: Life Imprisonment

Case Name: Charles M. Cohen
Case No.: IN90–02–0474 thru 0477
County: New Castle
Sentence: Life Imprisonment

Case Name: David F. Dawson
Case No.: IK86–0024; IK87–01–0841; 0843, 0845
County: New Castle (venue changed)
Sentence: Death

Case Name: Byron S. Dickerson
Case No.: IN90–12–1041, 1042
County: New Castle
Sentence: Life Imprisonment

Case Name: Cornelius E. Ferguson
Case No.: IN91–10–0576, 0578 thru 0581
County: New Castle
Sentence: Death

Case Name: Robert A. Gattis
Case No.: IN90–05–1017 thru 1019, 1106, 1107
County: New Castle
Sentence: Death

Case Name: Arthur Govan
Case No.: 92–01–0166
County: New Castle
Sentence: Life Imprisonment

Case Name: Robert W. Jackson, III ◆
Case No.: IN–92–04–1222 thru 1227; IN92–04–1348 and 1349
County: New Castle
Sentence: Death—automatic appeal pending

Case Name: David J. Lawrie ◆
Case No.: IK92–08–0179 thru 0185; IK92–09–0148 and 0149
County: Kent
Sentence: Death—present proceeding

Case Name: Frank W. Moore, Jr.
Case No.: 92–09–0001, 0002, 1001, 2001, 3001
County: Sussex
Sentence: Life Imprisonment

Case Name: Jack F. Outten ◆
Case No.: IN92–01–1144 and 1145
County: New Castle
Sentence: Death—automatic appeal pending

Case Name: Steven B. Pennell
Case No.: IN91–07–0114; 0115
County: New Castle

Sentence: Death

Case Name: James W. Perez
Case No.: IN–93–02–1191 and 1197
County: New Castle
Sentence: Life Imprisonment

Case Name: James Allen Red Dog
Case No.: IN91–02–1495 to 1503
County: New Castle
Sentence: Death

Case Name: Jose Rodriguez
Case No.: IN–93–020–1121
County: New Castle
Sentence: Life Imprisonment

Case Name: Nelson W. Shelton ♦
Case No.: IN–92–01–1154 and 1155
County: New Castle
Sentence: Death—automatic appeal pending

Case Name: Steven W. Shelton ♦
Case No.: IN92–01–1149 and 1150
County: New Castle
Sentence: Death—automatic appeal pending

Case Name: Donald J. Simmons
Case No.: IN92–01–0770 thru 0772; IN92–01–1140 and 1141
County: New Castle
Sentence: Life Imprisonment

Case Name: Willie G. Sullivan
Case No.: IK–01–0192 thru 0196; IK92–02–0001;
 IK92–03–0022
County: Kent
Sentence: Death

Case Name: Charles H. Trowbridge
Case No.: IK–91–07–0175, IK–91–09–0032 thru 0034
County: Kent
Sentence: Life Imprisonment

Case Name: John E. Watson
Case No.: IN–91–09–0020 thru 0025
County: New Castle
Sentence: Life Imprisonment

Case Name: Dwayne Weeks ♦
Case No.: 92–01–0167
County: New Castle
Sentence: Death—automatic appeal pending

Case Name: Jermaine M. Wright
Case No.: IN91–04–1047 thru 1953
County: New Castle
Sentence: Death